[Civ. No. 12646. Third Dist. Dec. 30, 1970.]

LEONIDES AVILA, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
B. S. BAINS et al., Respondents.

**COUNSEL**

Steel & Arostegui and Ronald L. Shumaker for Petitioner.

Thomas C. Lynch, Attorney General, Vincent P. Lafferty, Deputy Attorney General, Rupert A. Pedrin, Marcel L. Gunther, T. Groezinger and Philip Miyamoto for Respondents.

## OPINION

**FRIEDMAN, J.**—After the Workmen's Compensation Appeals Board denied reconsideration, we granted the injured employee's petition to review a permanent disability award.

The referee's formal findings declared that the occupational accident "caused 14½% permanent disability after apportionment." The findings did not specify the existence, kind or extent of disability attributable to a preexisting physical condition; did not fix the extent of combined disability after the accident; left these matters to inference drawn from the phrase "after apportionment." From the referee's opinion and from his report to the appeals board it is plain that he found a combined permanent disability, of which he ascribed 80 percent to a preexisting, disabling, nonindustrial condition and 20 percent to the compensable injury. We draw the inference that the applicant's combined, permanent disability rating is 100/20ths of the 14½ percent compensable disability, i.e., 72½ percent. We have confirmed this inference by studying the report and transcribed testimony of the rating specialist.[1]

Before the accident Mr. Avila, the applicant, had a permanent deformity of the right hip and leg as the result of an inflammatory disease during childhood. His right leg was underdeveloped, somewhat shorter than the left, and he walked with a limp. Nevertheless, he made a living as a farm laborer, picking and thinning fruit and ground crops and pruning trees. Witnesses described him as a "medium" or "average" agricultural worker, who carried and climbed ladders without particular difficulty. His hip and leg condition appears to have been stationary; at least, there is no evidence that it was progressive. In June 1967 he was thinning peaches and fell from a ladder, fracturing his right hip. Eventually he returned to his farm work but with marked impairment of his ability to perform tasks with his former agility, speed or sustained time span.

▇▇▇ Mr. Avila claims that his condition before the accident did not disable him from pursuing his occupation; thus, that this is a "lighting up"

---

[1]A reviewing court should not be forced to draw such inferences from scattered parts of the record. Although Labor Code section 3208.2, adopted in 1968, has not been discussed by the parties, it seems to demand specific findings on the separate factors involved in apportionment cases.

case, chargeable entirely to the job in which the accident occurred. ■ An employer takes the employee as he finds him and must compensate him not only for the disability caused by the industrial injury, but also for that resulting from the aggravation or "lighting up" of a preexisting, non-disabling disease; the ultimate disability may be apportioned only when some part of it would have resulted—absent the industrial injury—from the normal progress of the preexisting disease. (*Zemke* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928]; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 14.03[3][b].)

■ Necessarily implied among the referee's findings is the existence of a permanent disability or physical impairment antedating Mr. Avila's accident. Such a finding must stand if supported by substantial evidence. (*Argonaut Ins. Co.* v. *Industrial Acc. Com.*, 57 Cal.2d 589, 593 [21 Cal. Rptr. 545, 371 P.2d 281].) ■ A permanent disability is one ". . . which causes impairment of earning capacity, impairment of the normal use of a member, or a competitive handicap in the open labor market." (2 Hanna, *op. cit.*, § 14.01[2]; see Lab. Code, § 4660, subd. (a); *State Compensation Ins. Fund* v. *Industrial Acc. Com.* (*Hutchinson*), 59 Cal.2d 45, 52 [27 Cal.Rptr. 702, 377 P.2d 902].) ■ Although Mr. Avila's prior condition did not prevent him from performing "medium" or "average" agricultural labor, it was an impairment in a bodily function and a possible handicap in the open labor market, hence occupationally disabling. (*State Compensation Ins. Fund* v. *Industrial Acc. Com.* (*Hutchinson*), *supra.*) Four doctors (Leavenworth, Lawrie, Bovill and King) agreed that the applicant had a previously deformed right hip and a measurable shortening of the right leg. The medical evidence as well as the occupational history fully supported the referee's finding of a preexisting permanent disability.

■ The prior, permanent disability evokes Labor Code section 4750, which makes the employer liable only for that portion of the combined disability reasonably attributable to the last injury. ■ In resolving the apportionment issue, the referee and the board must rely upon expert medical advice; in order to constitute substantial evidence, the expert's opinion must rest upon relevant facts and must consist of something more than a legal conclusion. (*Zemke* v. *Workmen's Comp. App. Bd.*, *supra*, 68 Cal.2d at p. 798.)

■ Of the four doctors who reported, only Dr. Bovill attempted a segregation. His report declares: "Bearing in mind the obvious rather severe disability which existed in this hip, I would be inclined to estimate that perhaps 75% of his existing disability is referable to the previous

abnormality, and 25% to the injury in question. This certainly would be true, I feel as one measures the shortening and atrophy, and probably the limitation of motion, since I feel reasonably certain that these were quite marked even before the injury. The principal unknown is how much better of a position of function this leg might have been in before the injury, since the history would seem to confirm that it must have been in a less severely deformed position. It would, I believe, be impossible for him to climb a ladder, or do any sustained manual labor with the hip in the position that it is in now."

In his report to the appeals board, the referee stated that Mr. Avila had improved somewhat since Dr. Bovill's report, hence that he had reduced the doctor's estimate of injury-incurred disability to 20 percent. Earlier, in requesting a permanent disability rating from the Rating Bureau, the referee had premised his request upon his own apportionment of 20 percent to the industrial injury.

In his report Dr. Bovill stated only that he was "inclined to estimate" the apportionment. Although the report mentioned the relatively great occupational handicap after the injury, it omitted mention of the relatively minor handicap preceding it. Having failed to consider the character and extent of occupational handicap preceding the injury, it divided the ultimate disability to reach a result quite at odds with the comparative handicap before and after.[2] Apparently designed as nothing more than a factitiously mathematical division among diverse etiological factors, Dr. Bovill's report was accepted as the principal guide to an adjudication of apportionment. Although synthetic and judgmental, the apportionment process demands that occupational factors be weighed along with medical ones. Thus the report was only a partial response to the adjudicatory problem. Because it was accepted as a complete answer, the injured workman's minor lack of earning capacity preceding the accident received the major share of economic responsibility, while the major loss of earning power following the accident was assigned a minor share. Viewed as the basis of an apportionment of compensability, the report was a "guesstimate"which disregarded indispensably relevant factors; thus, it did not measure up to the level of substantial evidence. (See *Place* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656].)

---

[2]Before his fall from the ladder, according to uncontradicted evidence, Mr. Avila could thin an average of 30 to 35 trees a day; could pick seven bins of peaches a day; could climb a ladder using both legs; could carry objects on his back across rough ground and was an average worker. Since the accident he has been able to thin 7 to 8 trees a day; picks at most three bins of peaches; is unable to climb a ladder with both legs but must put his good leg on the first step and drags the other leg; cannot easily carry heavy objects.

■ Moreover, the apportionment formula contravened the principles sanctioned by *State Compensation Ins. Fund* v. *Industrial Acc. Com.* (*Hutchinson*), *supra.* In *Hutchinson,* as in the present case, there had been a preexisting permanent disability which brought the case within Labor Code section 4750, followed by an industrial injury which caused an overlapping disability. Under such circumstances *Hutchinson* requires use of the apportionment formula employed in *Gardner* v. *Industrial Acc. Com.,* 28 Cal.App.2d 682 [83 P.2d 295]. According to that formula, the preexisting percentage of disability should be calculated without reference to the later accident; that percentage should be subtracted from the combined disability; the difference then represents the compensable disability allocable to the subsequent injury. The *Hutchinson-Gardner* rule limits the liability of the accident-producing employment to the reduction in earning capacity which occurred in that employment, but assures the employee of compensation to the extent of that reduction. (See 2 Hanna, *op. cit.,* § 14.03[2]; Comment, 53 Cal.L.Rev. 279, 293.)

*Hutchinson* also points out that in overlapping disability cases, the later accident may occasion rehabilitation expenses not otherwise necessitated; that augmentation of rehabilitation costs is an important factor in determining the disability resulting from the subsequent injury. (59 Cal.2d at p. 52.)

Since this is a case of overlapping disabilities, the *Hutchinson-Gardner* method applies. The agency, nevertheless, did not follow it. Instead of subtracting the percentage of permanent disability attributable to the earlier condition, the agency used as its subtrahend a fraction of the combined rating. Its method tended to achieve a result more in keeping with the inapplicable "independent rating" formula. (See *State Compensation Ins. Fund* v. *Industrial Acc. Com.* (*Hutchinson*), *supra,* 59 Cal.2d at p. 53.) Quite obviously, different mathematical results will flow from using the earlier or later disability as the subtrahend; or from calculating a disability as a fraction of the combined disability instead of rating it as a percentage of total disability.

The decision is annulled and the cause remanded to the Workmen's Compensation Appeals Board for proceedings consistent with this opinion.

Pierce, P. J., and Janes, J., concurred.