[L.A. No. 30446. May 25, 1977.]

RONALD C. WILKINSON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
TAUREAN RESTAURANT et al., Respondents.

COUNSEL

Banks & Leviton and Eugene Leviton for Petitioner.

Charles L. Swezey, Philip M. Miyamoto, Thomas J. McBirnie, Evans, Dalbey & Cumming, Andrew W. Barclay and Barry F. Evans for Respondents.

OPINION

**TOBRINER, Acting C. J.**—This is a petition for writ of review by applicant Ronald Wilkinson, who incurred successive industrial injuries to both knees and obtained an award of $7,175 based upon a determination that each accident caused 15¼ percent permanent disability. Wilkinson claims he should have received an award of $8,662.50 based upon a combined disability for both injuries of 30½ percent. We sustain Wilkinson's contention and annul the decision of the board.

Under the doctrine established in *Bauer v. County of Los Angeles* (1969) 34 Cal.Comp.Cases 594, whenever a worker, while working for the same employer, sustains successive injuries to the same part of his body and these injuries become permanent at the same time, the worker is entitled to an award based on the combined disability. Rejecting both the suggestion of the board that *Bauer* should be limited to life pension cases and the contention of the employer that *Bauer* has been impliedly overruled by our decision in *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1 [128 Cal.Rptr. 673, 547 P.2d 449], we apply the *Bauer* doctrine to the facts of the instant case and direct an award based on the combined disability of 30½ percent.

Applicant Wilkinson was employed as a cook at the Taurean Restaurant in La Habra, Orange County, during the spring of 1972. On April 15, 1972, while carrying a grease trap downstairs to a barrel, he slipped and injured both knees. He reported the injury but did not stop work or seek medical attention. On June 30, 1972, he fell again while carrying a stockpot, injuring his back and both knees. Following this second injury he received medical treatment and, on direction of the treating physician, ceased working as a cook, a job which requires prolonged standing. The referee found that both injuries arose out of and occurred in the course of employment; that finding is not challenged before this court.

Although medical treatment successfully cured the back injury caused by the second fall, Wilkinson's knees continue to pain him, especially when he engages in prolonged, repetitive, or forceful acts which strain his knees. He has limited flexion in both knees, and some atrophy of the leg muscles.

Wilkinson applied for workers' compensation benefits for both injuries. On April 17, 1973, the workers' compensation judge found that his injuries were not stable and awarded only temporary disability benefits. At the hearing of February 20, 1974, the workers' compensation judge determined that the injuries had become permanent, inferentially at the same date.[1] Thus Wilkinson sustained injuries to the same portion of his body, while working for the same employer, and these injuries became permanent at the same time: the three elements essential for application of the *Bauer* doctrine.

Because of evidence that Wilkinson had prior knee problems caused by athletic injuries, the judge ordered 50 percent of the objective disability (the limited flexion and muscle atrophy) apportioned to those prior nonindustrial injuries. After deducting the disability allocated to such prior injuries, the rating specialist found a total combined disability attributable to the two industrial accidents of 30½ percent. The judge apportioned the industrial disability caused by the injuries of April 15 and June 30 equally between the two injuries, rating each at 15¼ percent. Applying the formula subsequently approved by *Fuentes* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.3d 1, for calculation of benefits in multiple injury cases, the judge awarded Wilkinson $3,587.50 for each injury, or a total of $7,175.

---

[1]The workers' compensation judge did not expressly find that the injuries arising from the two industrial accidents became permanent at the same time. He did, however, find that each injury was permanent and ratable as of February 20, 1974, and ordered permanent disability benefits paid forthwith for each injury. The medical record does not distinguish between the two injuries as to the date of permanency; the report of Dr. Roback, for example, simply states that Wilkinson's "condition" was stable and permanent.

In a similar factual setting, the board in *Bauer* reasoned that "We note that in each of these cases the Referee has found that permanent disability indemnity should commence to be payable on the same date. We infer, and there is nothing in the record to contradict the inference, that applicant's . . . disability as caused by both injuries became permanent and stationary on the same date." (*Bauer* v. *County of Los Angeles, supra,* 34 Cal.Comp.Cases 594, 598.) Because the workers' compensation judge in the instant proceeding also ordered permanent disability benefits for each injury to commence on the same date, and the medical reports do not distinguish the two injuries, we follow *Bauer* and infer that both injuries became permanent on the same date.

Wilkinson sought reconsideration, contending that he should have received a total award of $8,662.50, based upon a total disability of 30½ percent. The board granted reconsideration, but subsequently adopted the findings of the workers' compensation judge and affirmed his award. Wilkinson now petitions for review of the board's determination.

In apportioning Wilkinson's industrial disability between the injuries of April 15 and June 30 and in finding an equal division of disability, the board relied on Labor Code section 4750. That section provides that: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

In apportioning Wilkinson's disability pursuant to Labor Code section 4750, the board acted contrary to the policy it established in *Bauer* v. *County of Los Angeles, supra,* 34 Cal.Comp.Cases 594, in which it announced en banc that whenever a worker sustains successive industrial injuries to the same part of his body while working for the same employer, and these injuries become permanent at the same time, the board should render a single award for the combined disability. Wilkinson correctly points out that the facts of his case come within the *Bauer* doctrine, and that under *Bauer* he would be entitled to an award based on his combined disability of 30½ percent. Respondent board, however, suggests the *Bauer* doctrine should be limited to cases involving a claim for a life pension; respondent employer argues that *Bauer* has been impliedly disapproved by our decision in *Fuentes* v. *Worker's Comp. Appeals Bd., supra,* 16 Cal.3d 1. For the reasons we shall explain, we reject respondents' contentions, and uphold the application of the *Bauer* doctrine to the present case.

In *Bauer* the worker incurred successive back injuries while employed by the same employer. Since the combined disability exceeded 70 percent, the worker sought a life pension pursuant to Labor Code section 4659. The employer, however, contended that an award based on the combined disability was barred by the requirement of Labor Code section 4750 that the subsequent injury must be "considered by itself and not in conjunction with . . . the previous disability."

Replying to the employer's contention, the board stated that: "We are not convinced . . . that Labor Code Section 4750 is applicable to the successive back injuries. . . . [A]pplicant's back disability as caused by *both* injuries became permanent and stationary on the same date. This being so, in a real sense as to the subsequent injury there *was no pre-existing permanent disability.* Therefore, the single disability as caused by both injuries can be combined. . . ." (34 Cal.Comp.Cases at p. 598.)

The board relied upon a prior panel decision in *Revere Copper and Brass* v. *W.C.A.B. (Dunlap)* (1969) 34 Cal.Comp.Cases 532. In that case a worker suffered three successive heart injuries which became permanent at the same time but rated separately at 66½ percent, 67 percent, and 67 percent. Instead of awarding the worker a pension from the Subsequent Injuries Fund based upon the latter two injuries (see Lab. Code, § 4751), the board combined the injuries to find a total permanent disability of 100 percent, thus awarding Dunlap a life pension from the employer. Noting the similarity between the two cases, the board in *Bauer* concluded that "the *Dunlap* method of awarding indemnity is applicable to applicant's back injuries herein and is the fairest, most equitable solution as to all parties." (34 Cal.Comp.Cases at p. 599.) Board decisions subsequent to *Bauer* have followed the doctrine established in that case. (See *Industrial Indemnity Co.* v. *Workmen's Comp. App. Bd. (Soliz)* (1970) 35 Cal.Comp.Cases 614; *A. Abbey & Howard Scrap Metal Co.* v. *Miller* (1972) 37 Cal.Comp.Cases 236.)

The *Bauer* doctrine is consistent with the language of section 4750, which requires apportionment only when the employee "is suffering from a *previous* permanent disability or physical impairment." Thus the section does not require apportionment in all cases of successive injuries, but only in cases of successive permanent disabilities. If the worker incurs successive injuries which become permanent *at the same time,* neither permanent disability is "previous" to the other, and section 4750 hence does not require apportionment.

*Bauer* also serves the practical purpose of avoiding the necessity for apportioning disability in a class of cases in which, because of the nature and timing of the injuries, any apportionment is likely to be unsupported by substantial evidence. The present case illustrates the point. Wilkinson did not seek medical help until after his second injury, with the result that the medical experts were only able to view the combined effect of both injuries. Although Dr. Roback indicated that the

injury of June 30, 1972, was more serious than the injury of April 15, 1972, neither he nor any other medical expert suggested an apportionment of Wilkinson's disability between the two industrial injuries.[2] ■

■■■ Thus on the record before us on review, we can discern no substantial evidence to support the board's apportionment of the award equally between the two injuries.[3]

■ The deficiency in the evidentiary support for the board's decision in the present case goes beyond the question whether the disability should be apportioned equally or unequally between the two industrial injuries. ■ Before the board can make any apportionment between two injuries, the board must be presented with substantial evidence to show that the normal progression of the earlier injury would cause permanent disability. (See *Hulbert* v. *Workmen's Comp. Appeals Bd.*, 47 Cal.App.3d 634, 640 [121 Cal.Rptr. 239]; *Avila* v. *Workmen's Comp. App. Bd., supra*, 14 Cal.App.3d 33, 37.) ■ Wilkinson correctly points out that no such evidence exists. The record demonstrates only that the April 15 injury had not produced permanent disability by the date of the second injury and no physician asserts that the earlier injury would have eventually progressed to permanent disability without the additional trauma of the second injury.[4]

[2]In its brief, insurer relied primarily on language in the medical report of Dr. Roback to support the board's apportionment. Dr. Roback stated that, "Even if the patient was asymptomatic before the two accidents at work in 1972, he undoubtedly had changes present in both knees. Therefore, it is probable that he had some limitation of motion in the knees before the present injuries. In addition, he probably had some atrophy in the lower extremities as a result. of the previous surgeries. [¶] It probably would be as accurate to make a 50 percent apportionment to the pre-existing condition and a 50 percent apportionment to the *present injuries*, as to make any other apportionment for the objective factors of permanent disability." (Italics added.)

At argument, however, counsel acknowledged that Dr. Roback was not discussing apportionment between the two industrial injuries; he was speaking of apportionment between the combined industrial disability and the pre-existing nonindustrial disability. Thus his report does not support the board's equal division of Wilkinson's disability between the two industrial injuries.

[3]As stated in *Avila* v. *Workmen's Comp. App. Bd.* (1970) 14 Cal.App.3d 33, 37 [91 Cal.Rptr. 853]: "In resolving the apportionment issue, the referee and the board must rely upon expert medical advice; in order to constitute substantial evidence. the expert's opinion must rest upon relevant facts and must consist of something more than a legal conclusion."

[4]The possibility that Wilkinson's second injury resulted in greater disability because he had not yet recovered from the first injury would not justify apportionment unless the first injury in itself would normally have progressed to cause a permanent disability. As we stated in *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 799-800 [69 Cal.Rptr. 88, 441 P.2d 928]: "A disability resulting from an industrial injury is fully compensable [i.e., without apportionment] even though a pre-existing disease increases the disability caused by the injury or interferes with healing and recovery."

As we have stated, this absence of substantial evidence to support apportionment is typical of *Bauer* injuries. When as here the physicians do not see the worker until after the second injury, any attempt on their part to allocate the combined disability between the two injuries is likely to be no more than speculation and guesswork. But even in cases in which the worker has been examined by a physician between the two injuries, the interaction between the injuries may make apportionment of disability impossible or inequitable. The second injury may prevent the first from healing properly, converting that which would have been a temporary disability into a permanent disability; the first injury may render the injured part of the body unusually weak or sensitive and thus contribute to the damage caused by the second. Consequently, awards for each injury as if the other had not occurred would necessarily be based upon hypothetical disabilities which, added together, total to far less than the actual disability suffered by the worker and observed by the reporting physicians.

Respondents, however, contest the application of the *Bauer* doctrine to the present case. Counsel for the board observes that *Bauer, Revere Copper & Brass,* and later board proceedings following those authorities all involved claims for a life pension; he suggests in his brief that perhaps the doctrine should not be applied to the present case since no life pension is at issue here.

The board's use of the *Bauer* doctrine only in life pension cases, however, does not indicate that the doctrine should be so limited. All of the cited cases arose prior to the effective date of the amendments to Labor Code section 4658. Under the nonprogressive rate structure then in effect, life pension cases were the only cases in which the allocation of disability between industrial injuries could affect the amount of the worker's award. In short, the board applied the *Bauer* doctrine to all cases in which that doctrine would affect the result.

As we have noted, the *Bauer* doctrine rests on the language of section 4750. That language does not differentiate between cases in which a worker seeks a life pension and those in which he claims only ordinary disability benefits, nor does it distinguish between injuries sufficiently serious to entitle the worker to a life pension and those which entitle him only to disability benefits. The *Bauer* doctrine serves to overcome the problem of apportionment in a class of cases in which adequate evidence for apportionment is usually unavailable; that rationale for the doctrine does not distinguish life pension cases from

ordinary disability cases. The reasons underlying the *Bauer* decision thus indicate that *Bauer* should apply to all cases in which successive injuries to the same part of the body become permanent on the same date, and should not be limited to life pension claims.

Concluding that the *Bauer* doctrine cannot reasonably be limited to life pension cases, we turn to the contention of respondent employer that our decision in *Fuentes* v. *Workers' Comp. Appeals Bd., supra*, 16 Cal.3d 1, impliedly disapproved that doctrine. *Fuentes* involved a single injury, apportioned 58 percent to industrial causation and 42 percent to nonindustrial causation; we interpreted section 4750 to set forth the method of calculating benefits for the industrially caused disability. In contrast to *Bauer*, *Fuentes* did not involve successive industrial injuries to the same part of the body which become permanent at the same time. Consequently, *Fuentes* did not discuss *Bauer*, and our decision in *Fuentes* explaining how to apportion disability for injuries falling *within* section 4750 is inapplicable to "Bauer" injuries which do *not* fall within the scope of that section.

*Fuentes* is relevant to the present case only in that it can arguably be construed as representing a view of workers' compensation policy which may appear inconsistent with the views underlying *Bauer*. *Bauer*, for example, asserted that it was equitable to award a worker who had suffered successive back injuries, causing a combined disability of 70 percent, the same benefits as would be awarded a worker who suffered a single back injury causing 70 percent disability. *Fuentes*, on the other hand, interpreted section 4750 in such a way that the worker who incurs a single injury will usually receive greater benefits than one who incurred successive injuries resulting in the same total disability. Our opinion in *Fuentes*, however, did not rest upon any broad proposition that awards based upon a combined disability rating are inequitable, but upon the narrower proposition that such awards contravene the language and policy of section 4750. Since the *Bauer* doctrine holds that injuries covered by it do not fall under section 4750 in any event, *Fuentes* does not undermine *Bauer*.

Respondent employer observes that *Fuentes* rests in part on the policy of encouraging employers to hire and retain handicapped persons (see 16 Cal.3d at p. 6) and contends that the *Bauer* doctrine conflicts with that policy. But state policy favoring the handicapped would have to be stretched beyond all reasonable bounds before it would clash with *Bauer*. The *Bauer* doctrine as presently limited only applies to cases in which

both injuries were sustained in the course of employment by the same employer and thus would not discourage hiring of previously injured persons. And since that doctrine applies only in the rare circumstance that an employee sustains a second injury to the same part of his body before the first injury has become permanent, we cannot see how *Bauer* would induce employers to discharge injured workers.

Finally, we point out that a decision disapproving *Bauer*, or holding that *Fuentes* had impliedly disapproved *Bauer*, would not remedy the lack of evidence to justify apportionment characteristic of this and other cases which fall within the *Bauer* doctrine. Unless we sanction a departure from the rule that all findings must be supported by substantial evidence, the board in such cases must still base its finding and award upon the combined disability which is the only one observed and described by the medical experts.

■ It is a settled principle of statutory interpretation that "The contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation is entitled to great weight unless it is clearly erroneous or unauthorized." (*Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].) ■ The board's promulgation of the *Bauer* doctrine represents both a reasonable construction of Labor Code section 4750 and a sensible solution to the problem of lack of substantial evidence to justify apportionment in many cases falling within that doctrine. Giving that interpretation the weight to which it is entitled, we conclude that the *Bauer* doctrine should be upheld.[5] As we have explained, we find nothing in *Fuentes* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.3d 1, contrary to that conclusion.

---

[5]The language of Labor Code sections 3208.2 and 5303, if read without regard for the legislative history of those sections, might appear inconsistent with the *Bauer* doctrine. Section 3208.2 states that "[w]hen disability . . . results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including . . . the apportionment between such injuries of liability for disability benefits." Section 5303 states in part that "no injury, whether specific or cumulative, shall, for any purpose whatsoever, merge into or form a part of another injury. . . ."

Despite the broad language of these sections, the legislative history of their enactment in 1968 indicates that the Legislature intended merely to "nullify the effect upon the law of Workmen's Compensation of certain . . . decisions of the Court of Appeal and of the Supreme Court including *Dow Chemical Co.* v. *Workmen's Compensation Appeals Board* [(1967) 67 Cal.2d 483 (62 Cal.Rptr. 757, 432 P.2d 365)]; *De Luna* v. *Workmen's Compensation Appeals Board* [(1968) 258 Cal.App.2d 199 (65 Cal.Rptr. 421)]; *Miller* v. *Workmen's Compensation Appeals Board* [(1968) 258 Cal.App.2d 490 (65 Cal.Rptr. 835)]; and *Freuhauf Corporation* v. *Workmen's Compensation Appeals Board* [a 1968 Court of Appeal decision vacated by our grant of a petition for hearing]." ((1968) Assem. J., First

Since the facts of the present case bring it within the *Bauer* doctrine, we conclude that the board erred in apportioning Wilkinson's permanent disability between the injuries of April 15, and June 30, 1972. The decision of the Workers' Compensation Appeals Board is annulled and the case is remanded to that board with directions to grant applicant permanent disability benefits based upon a combined disability of 30½ percent.

Mosk, J., Sullivan, J.,* and Files, J.,† concurred.

**RICHARDSON, J.,** Concurring and Dissenting.—I concur in the judgment because the peculiar facts of this case afford no basis for concluding, either that the first industrial injury had produced a permanent disability at the time that the second injury occurred, or that such permanent disability would have occurred even in the absence of the second injury. The nature of these two injuries, their similarity in both cause and result, their proximity in time, and the lack of any medical evaluation as to the effect of the first injury alone, combine to render suspect any attempt at apportionment. Indeed, none of the examining physicians expressed any opinion as to whether, or how, the industrial injuries in this case should be apportioned. Our review of the board's apportionment of disability must, of course, be based upon the entire record. (Lab. Code, § 5952: *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432]; *Hulbert* v. *Workmen's Comp. App. Bd.* (1975) 47 Cal.App.3d 634, 640 [121 Cal.Rptr. 239].)

I do not concur, however, in any inference which may flow from a superficial reading of the majority opinion, and which may suggest that

---

Ex. Sess., pp. 21-22.) The cited decisions permitted the board to reclassify or combine specific and cumulative injuries for the purpose of avoiding the bar of the statute of limitations. (See discussion in Comment (1968) 9 Santa Clara Law. 156.) Nothing in the legislative history of sections 3208.2 or 5303 suggests that the Legislature intended to require apportionment in ordinary disability cases which do not fall within the scope of section 4750 or that it intended to overturn the *Bauer* doctrine that a case involving successive injuries to the same part of the body which become permanent at the same time does not fall within the scope of section 4750.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.

successive short-term, similar injuries in service to the same employer are to be considered simultaneously permanent *as a matter of law,* thereby creating any broad exception to the separate-award rule clearly enunciated by Labor Code section 4750. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 6 [128 Cal.Rptr. 673, 547 P.2d 449].) Such a conclusion is not dictated by the "*Bauer* doctrine" adopted by the majority. The board in *Bauer* recognized the applicability of section 4750 whenever there is a "pre-existing permanent disability," even where incurred in service to the same employer. (See *Dow Chemical Co.* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 483, 492 [62 Cal.Rptr. 757, 432 P.2d 365].) It carefully noted that the disabilities in that case could be combined since "[w]e infer, *and there is nothing in the record to contradict the inference,* that . . . disability as caused by *both* injuries became permanent and stationary on the same date." (First italics added.) (*Bauer* v. *County of Los Angeles* (1969) 34 Cal.Comp.Cases 594, 598.)

Where, however, in contrast, the record *does* reflect a "previous" disability, section 4750 manifestly requires separation of the applicable awards. The most obvious example arises when a disabling injury occurs after the employee has already received a permanent disability rating for a prior condition. I do not understand the majority position to be that an unapportioned award would be proper in such a situation, even though the successive disabilities had been produced by injuries alike in nature, close in time, and incurred in service to the same employer. Similarly, where no previous rating has occurred, but the record nonetheless supports the conclusion that separate injuries resulted in separate permanent disabilities at different times, section 4750 mandates apportionment. The foregoing result is consistent with a companion statute applicable to diseases, Labor Code section 4663, which provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

In the matter before us, therefore, apportionment would have been called for even though disability from both injuries became permanent at the same time, had the evidence indicated that the April injury *would have progressed normally* to permanent disability whether or not the June accident had occurred. (*Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928]; *Berry* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 786, 790 [69 Cal.Rptr. 68, 441 P.2d 908].)

As we observed in *Fuentes, supra,* the disparate awards for similar disabilities which may result when the apportionment requirements are applied to the recently enacted progressive-benefit scale (Lab. Code, § 4658) are "a consequence of the recent amendments to [the benefit scale] . . . and . . . consistent with the previously noted policy of encouraging employers to hire the disabled. There being no evidence to the contrary, this court must assume that such a result was contemplated by the Legislature." (16 Cal.3d at p. 8.)

It is arguable that the policy considerations behind apportionment of successive disabilities are less relevant when those disabilities were all incurred in service to the same employer. In such cases, unlike those involving multiple employers or nonindustrial conditions, there is no danger of a disproportionate assessment upon the most recent employer. Indeed, when the separate-award rules interact with the progressive-benefit scale, a *single employer* actually receives a "windfall" in those cases in which a combined disability incurred *in his service* is produced in installments, when compared with the same disability arising from a single incident. Nonetheless, presumably the policy underlying sections 4663 and 4750 is to encourage employers to *retain* disabled workers as well as to *employ* them. We must assume that the Legislature intended these consequences when it amended the method of computing benefits, while leaving intact the clear language of sections 4663 and 4750. (See *Fuentes, supra,* 16 Cal.3d at p. 8.)

Clark, J., concurred.

On June 23, 1977, the opinion was modified to read as printed above.