[No. A056407. First Dist., Div. Five. Mar. 16, 1993.]

DEPARTMENT OF EDUCATION, DIVISION OF STATE SPECIAL SCHOOLS, CALIFORNIA SCHOOL FOR THE DEAF, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and THELMA SWAIN GILL, Respondents.

COUNSEL

Krimen, Hershenson, Klein, Da Silva & Daneri and Don E. Clark for Petitioner.

Langer & Murray and John J. Murray for Respondents.

OPINION

PETERSON, P. J.—In this case, we hold that the Workers' Compensation Appeals Board (Board) did not have jurisdiction to alter the permanent and stationary date of the earliest industrial injury sustained by respondent Thelma Swain Gill (applicant), in order to apply the principles enunciated in *Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491 [138 Cal.Rptr. 696, 564 P.2d 848] (*Wilkinson*) and to award applicant a single combined permanent disability (PD) rating of 100 percent for her three successive industrial injuries. Even though the threshold prerequisites of *Wilkinson* are met and the medical evidence credibly supports a finding that applicant is totally and permanently disabled, apportionment of PD is appropriate pursuant to *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1 [128 Cal.Rptr. 673, 547 P.2d 449] (*Fuentes*) because the award of PD for applicant's earliest injury is final and cannot be disturbed. For the reasons discussed below, we are compelled to annul and remand the decision of the Board.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Applicant, while employed as a cook by petitioner California School for the Deaf (CSD), sustained four successive industrial injuries, as follows: (1)

on December 2, 1966, to her back (OAK 38781); (2) on October 9, 1970, to her back (OAK 38782); (3) on May 19, 1987, to her head, back, and right leg (OAK 157587); and (4) from 1970 to January 31, 1988, to her back and legs (OAK 159231).

On August 8, 1972, findings and award issued in the first two injury cases. All of the PD emanated from the second injury sustained on October 9, 1970, in OAK 38782.[1] Applicant was awarded a 7½ percent PD rating, the monetary equivalent of $1,459.50, payable at $48.65 per week pursuant to the statutory scheme in effect at the time of the 1970 injury. (Lab. Code,[2] § 4658.) Subsequently, applicant timely petitioned to reopen the October 1970 injury, claiming new and further disability. The petition was granted. On June 27, 1975, applicant was awarded, as pertinent, an additional PD rating for the injury of October 9, 1970, of 20 percent, the monetary equivalent of $3,892, payable at $48.65 per week commencing on March 29, 1975. No further petitions to reopen the injury claim of October 9, 1970, were filed by applicant. The award of June 27, 1975, was final.

On September 26, 1991, findings and award issued in the latter two injury cases (OAK 157587, 159231). The workers' compensation judge (WCJ) found applicant permanently, totally disabled as a result of all three injuries. The WCJ relied on medical opinion that applicant's condition resulted in a limitation to semisedentary[3] or sedentary[4] work, expert vocational testimony that applicant was not feasible for vocational rehabilitation pursuant to *LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234 [193 Cal.Rptr. 547, 666 P.2d 989], and applicant's credible testimony regarding her level of pain, physical limitations, and inability to work. These findings are not contested on review.

---

[1]Although applicant sustained four successive injuries, it was determined that the first injury did not result in any PD and that all of the PD resulted from the second injury in OAK 38782. Thus, we will reference only the three successive injuries which resulted in the PD at issue herein.

[2]All subsequent statutory references are to the Labor Code.

[3]A "Disability Resulting in Limitation to [S]emi-Sedentary [W]ork" falls under category g of the "Guidelines for Work Capacity" (hereafter Guidelines) in the schedule for rating permanent disabilities (hereafter Rating Schedule), and is assigned a standard PD rating of 60 percent before modification for occupation and age. (Rating Schedule, p. 1-A.) It "contemplates the individual can do work approximately one half the time in a sitting position, and approximately one half the time in a standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting." (*Ibid.*)

[4]A "Disability Resulting in Limitation to Sedentary Work" falls under category h of the Guidelines and "contemplates the individual can do work predominantly in a sitting position at a bench, desk or table with a minimum of demands for physical effort and with some degree of walking and standing being permitted." (Rating Schedule, p. 1-A.)

The WCJ further determined that the three industrial injuries were to the same part of the body and became permanent and stationary at the same time. Relying on *Harold v. Workers' Comp. Appeals Bd.* (1980) 100 Cal.App.3d 772 [161 Cal.Rptr. 508] (*Harold*), he issued a single combined PD award of 100 percent for all three injuries pursuant to the principles enunciated by *Wilkinson, supra,* 19 Cal.3d 491. The PD was ordered payable at the PD rates in effect at the time of the last cumulative injury ending on January 31, 1988. This resulted in a total PD award to applicant for the balance of her life in the weekly amount of $224 (see §§ 4452.5, subd. (a); 4453, subd. (a)(2); 4658, subd. (a)), with monetary credit for all prior payments, including the original PD awards of 7½ and 20 percent for the earliest injury in October 1970.

CSD filed a petition for reconsideration. On November 5, 1991, the WCJ submitted to the Board his report on petition for reconsideration, recommending that the petition be denied. Pertinent to the issues on review, the WCJ stated: "The findings and award in OAK 38782 [1970 injury] cannot be altered now, but it may nonetheless be combined with the new cases, so long as the carrier is given credit for all it has already paid toward applicant's 100 percent rating. [Citation to *Harold, supra,* 100 Cal.App.3d at pp. 786-787.] Thus, even though applicant's condition may have been permanent and stationary at some point in the past, the new injuries destabilized the old injury, which contributed significantly to the new [PD]. Accordingly, they should all be combined together into an overall rating, but credit given to [CSD] for what they have already paid. [¶] They are not, however, entitled to 'credit' for that old award under [citation to *Fuentes, supra,* 16 Cal.3d 1], as [CSD] requests. [Record Citation.] The *Fuentes* approach is used where apportionment is justified by the evidence, the *Wilkinson* one where it is not. Here, the evidence does not warrant apportionment for the reasons stated above."

On December 16, 1991, the Board issued its order denying reconsideration, stating: "Based on our review of the record, and for the reasons stated in said report which we adopt and incorporate, we will deny reconsideration."

CSD timely seeks review of the Board's decision in this court. Applicant has filed an answer. The sole issue to be determined is whether the Board has jurisdiction to alter the permanent and stationary date of the October 1970 injury in order to apply *Wilkinson,* rather than *Fuentes,* in assessing applicant's PD entitlement.

## II. DISCUSSION

### A. *Apportionment of PD Under Fuentes*

*Fuentes, supra,* 16 Cal.3d 1, concerned the appropriate method of assessing an employer's liability for PD for an industrial injury where a portion of the injured employee's overall PD was attributable to a nonindustrial disability preexisting April 1, 1972.[5] ■ Applying section 4750,[6] the Supreme Court held that, where apportionment of a preexisting PD is appropriate, the proper method of converting the PD rating to a number of weeks of compensation under section 4658 is to apportion the disability by first subtracting the percentage, not the monetary value, attributable to the pre-existing disability from the total PD rating. (*Fuentes, supra,* 16 Cal.3d at pp. 5-6.) The remaining percentage of PD attributable to the industrial injury, directed the court, is then converted to its monetary equivalent. (*Ibid.*) Although *Fuentes* concerned apportionment of a preexisting nonindustrial PD, it may be applied in cases involving apportionment to a preexisting industrial PD. In these apportionment cases, the *Fuentes* approach results in a lower monetary recovery to injured employees in light of the graduated PD rate scale set forth in section 4658. However, the impact of *Fuentes* in certain successive industrial injury cases has been notably restricted, commencing with the Supreme Court's decision in the landmark *Wilkinson* case.

### B. *Wilkinson and Its Progeny*

■ ▬ ■ ■ Where successive industrial injuries to the same part of the body become permanent and stationary[7] at the same time, the injured employee is entitled to a PD award based upon the combined disability at the

---

[5]Prior to April 1, 1972, section 4658 provided that an injured employee was entitled to four weeks of compensation for each 1 percent of industrial PD. (Stats. 1949, ch. 1583, § 1, p. 2833.) Effective April 1, 1972, section 4658 was amended to provide a graduated or progressive PD rate scale, whereunder the number of weekly PD benefits increases in proportion to the percentage of PD. (See *Rumbaugh* v. *Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 907, 910 [151 Cal.Rptr. 563].)

[6]Section 4750 provides: "An employee who is suffering from a previous [PD] or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

[7]"A disability is considered permanent after the employee has reached maximum improvement or his condition has been stationary for a reasonable period of time." (Cal. Code Regs., tit. 8, § 9735.) Termination of temporary disability status is not determinative of permanent and stationary status per se because it considers solely the injured employee's ability to work. (*Huston* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868 [157 Cal.Rptr. 355]; accord, *Harold, supra,* 100 Cal.App.3d at p. 785.) Rather, permanent and stationary status

PD rates applicable at the time the last injury of the successive injuries giving rise to such benefits occurred. (*Wilkinson, supra,* 19 Cal.3d at p. 494; *Stoiber* v. *Workers' Comp. Appeals Bd.* (1992) 5 Cal.App.4th 1403, 1407-1408 [7 Cal.Rptr.2d 470] (review den. July 16, 1992) (*Stoiber*); *Fremont Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1989) 208 Cal.App.3d 914, 917-918 [256 Cal.Rptr. 413]; *Rielli* v. *Workers' Comp. Appeals Bd.* (1982) 134 Cal.App.3d 721, 724 [184 Cal.Rptr. 825]; *Volomino, supra,* 118 Cal.App.3d at p. 272; *Norton* v. *Workers' Comp. Appeals Bd.* (1980) 111 Cal.App.3d 618, 625 [169 Cal.Rptr. 33]; *Harold, supra,* 100 Cal.App.3d at pp. 784-786, 788, fn. 9; *Fullmer* v. *Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 164, 166 [157 Cal.Rptr. 735]; *Taylor* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 139, 146-148 [156 Cal.Rptr. 906]; *Nuelle, supra,* 92 Cal.App.3d at p. 249; *Rumbaugh* v. *Workers' Comp. Appeals Bd., supra,* 87 Cal.App.3d at p. 914; *Aten* v. *Workers' Comp. Appeals Bd.* (1977) 75 Cal.App.3d 113, 118 [142 Cal.Rptr. 42]; *Bauer* v. *County of Los Angeles* (1969) 34 Cal.Comp.Cases 594, 598-599 [Board in bank opn.].) "If the worker incurs successive injuries which become permanent *at the same time,* neither [PD] is 'previous' to the other, and section 4750 hence does not require apportionment." (*Wilkinson, supra* 19 Cal.3d at p. 497, italics in original.)[8]

Here, relying on *Harold*'s application of *Wilkinson,* and credible medical evidence that the 1970, 1987, and 1988 injuries became permanent and stationary at the same time after the 1988 injury, the Board determined that apportionment of applicant's PD under *Fuentes* is inappropriate. Instead, the Board awarded applicant a single combined PD of 100 percent payable at the PD rates in effect in 1988. ■ *Harold,* however, is not controlling. To the contrary, the consolidated PD award for all three injuries is flawed because the Board lacks jurisdiction to alter the previously determined permanent and stationary date for the October 1970 injury.

refers to medical rehabilitation. (*Ibid.*) Thus, an injured employee may be fully capable of working when the medical condition is not yet permanent and stationary. (*Ibid.*) Moreover, the *Wilkinson* rule applies even where one of the injuries was previously rated for PD, if substantial medical evidence indicates that such injury actually was getting progressively worse until the time that all the injuries became permanent and stationary. (*Harold, supra,* 100 Cal.App.3d at p. 786; *Nuelle* v. *Workers' Comp. Appeals Bd.* (1979) 92 Cal.App.3d 239, 246 [154 Cal.Rptr. 707] (*Nuelle*); accord, *Liberty Mut. Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1981) 118 Cal.App.3d 265, 272 [173 Cal.Rptr. 349] (*Volomino*).) In the matter before this court, the Board's finding that the latter two industrial injuries became permanent and stationary at the same time is not challenged.

[8]In contrast to *Fuentes,* under *Wilkinson* for example, where one back injury occurred when the PD rate was $52.50 per week and the second back injury occurred when the PD rate was $70 per week, the injured employee is entitled to a consolidated PD award for the total percentage of PD from both injuries at the $70 per week rate, with monetary credit allowed for any prior PD payments. (*Volomino, supra,* 118 Cal.App.3d at p. 272; accord, *Harold, supra,* 100 Cal.App.3d at pp. 781-783, 788.)

### C. *Application of Wilkinson Must Adhere to Continuing Jurisdictional Time Limitations*

Sections 5410, 5803, 5804, and 5805[9] govern the entire spectrum of the Board's continuing jurisdiction. (*Sanchez* v. *Workers' Comp. Appeals Bd.* (1990) 217 Cal.App.3d 346, 353 [266 Cal.Rptr. 21].) Section 5410 provides, as pertinent: "Nothing in this chapter shall bar the right of any injured worker to institute proceedings for the collection of compensation . . . within five years after the date of the injury upon the ground that the original injury has caused new and further disability . . . . The jurisdiction of the appeals board in these cases shall be a continuing jurisdiction within this period." Section 5804 provides, as pertinent: "No award of compensation shall be rescinded, altered, or amended after five years from the date of the injury except upon a petition by a party in interest filed within such five years . . . ."

Turning to *Harold*, careful examination reveals that the court fully adhered to the statutory continuing jurisdictional time limitations when applying *Wilkinson* principles to the facts before it. In *Harold*, the injured employee sustained two successive industrial injuries to her right lower extremity in 1971 and 1973. (100 Cal.App.3d at p. 775.) In 1972, she was awarded a PD of 4 percent for the 1971 injury, payable at the weekly PD rate of $52.50 then in effect. In 1973, after Harold sustained her second injury, she not only filed a claim for that injury, but also timely petitioned in 1974 to reopen the PD awarded for the 1971 injury. In 1975, prior to *Wilkinson*, the WCJ granted the petition to reopen and increased the PD to 32½ percent for the 1971 injury. (*Harold, supra,* 100 Cal.App.3d at p. 783.) Additionally, Harold was awarded a separate PD of 33 percent for the 1973 injury, payable at the weekly PD rate of $70 due to the amendments to section 4658 effective April 1, 1972. (*Harold, supra,* 100 Cal.App.3d at p. 783.) Significantly, *at the same time in 1975, when the Board had jurisdiction over both the 1971 and 1973 injuries, the WCJ also found that the two injuries became permanent and stationary at the same time.* (*Ibid.*) The Board granted reconsideration and annulled the WCJ's findings. On review for the first time, the appellate court reversed, determining that the Board improperly disregarded the WCJ's findings because there was no evidence of considerable substantiality contrary to the WCJ's finding that both injuries became permanent and stationary at the same time. (100 Cal.App.3d at p. 786.)

---

[9]Section 5803 provides, as pertinent: "The appeals board has continuing jurisdiction over all its orders, decisions, and awards . . . . At any time . . . the appeals board may rescind, alter, or amend any order, decision, or award, good cause appearing therefor."

Section 5805 provides: "Any order, decision, or award rescinding, altering or amending a prior order, decision, or award shall have the effect herein provided for original orders, decisions, and awards."

Subsequently, the Supreme Court decided *Wilkinson.* On October 5, 1977, following the issuance of *Wilkinson,* Harold filed a petition to reopen the 1973 injury claim to take advantage of *Wilkinson's* effect on her PD computation. (*Harold, supra,* 100 Cal.App.3d at p. 783.) Harold did not petition to reopen the 1971 injury award because more than five years had elapsed since the date of injury, and the Board no longer had continuing jurisdiction to reopen that case. (*Ibid.,* citing §§ 5410, 5803, 5804.)

On review for a second time pertinent to the issues herein, the court initially confirmed that Harold correctly did not petition to reopen the 1971 injury award insomuch as the Board was without jurisdiction to act. (*Harold, supra,* 100 Cal.App.3d at pp. 775, 786.) The court emphasized, however, that the jurisdictional bar against reopening the 1971 injury case did "not prevent the court from applying *Wilkinson, Nuelle, Taylor* and *Fullmer* to the 1973 injury award to the extent possible." (*Id.* at p. 787; accord, *Stoiber, supra,* 5 Cal.App.4th at pp. 1409-1410.) Accordingly, the court awarded one consolidated PD of 65½ percent payable for 349½ weeks. Next, reconciling the jurisdictional bar involving the 1971 injury, *Harold* ordered PD payments for the first 130 weeks (representing the 32½ percent PD previously awarded for the 1971 injury) payable at the 1971 rate of $52.50, resulting in full credit for the prior payment in same amount. (100 Cal.App.3d at pp. 787-788.) The court then ordered the balance of 219.5 weeks payable at $70 per week, allowing for monetary credit for all prior payments at the lower PD rate, but also resulting in a larger monetary recovery for the overall PD awarded. (*Id.* at p. 788.)

Turning to the matter before this court, the Board relies on *Harold* as justification for its application of *Wilkinson.* We disagree. In *Harold,* unlike the instant matter, jurisdictional time limitations were *not* exceeded when the permanent and stationary date for the earlier 1971 injury was altered in reaching the final PD award. Rather, *Harold* only applied *Wilkinson* to the fullest extent allowable by law. The Board's reliance on *Harold* is misplaced. Its error is traceable to a subtle yet critical factual distinction neglected in its otherwise careful analysis. *Volomino, supra,* illustrates this distinction.

In *Volomino,* the injured employee suffered three successive industrial injuries to the same part of the body, as required by *Wilkinson:* (1) a specific injury on October 18, 1963; (2) a cumulative injury from April 1970 to April 9, 1975; and (3) a specific injury on April 9, 1975. In 1969, the Board found that the 1963 injury was permanent and stationary, and awarded a PD of 52 percent payable at $52.50 per week for 208 weeks pursuant to the appropriate statutory rates in effect at the time of injury. (*Volomino, supra,* 118

Cal.App.3d at pp. 269-270.) A petition to reopen the 1963 injury was not filed within the five-year statutory time limitation period. Accordingly, the Board's continuing jurisdiction over the 1963 injury expired. Nonetheless, the Board subsequently determined pursuant to updated medical evidence that all three of Volomino's injuries, including the 1963 injury, became permanent and stationary at the same time, applied *Wilkinson* principles, and awarded a 100 percent PD, payable in weekly benefits for life at $119, the rate in effect at the time of the last injury in 1975. (*Volomino, supra,* 118 Cal.App.3d at p. 270.) On review, the appellate court reversed. Distinguishing *Harold,* the *Volomino* court determined that the Board had erroneously applied *Wilkinson* to include the earliest of three successive industrial injuries in one combined PD rating. The Board, held *Volomino,* lacked continuing jurisdiction to alter the earlier injury. (118 Cal.App.3d at p. 275.) The court articulated as follows: "In *Harold* the injured worker within five years of the date of the 1971 injury had filed a petition to reopen the award for such injury. Thus, when the WCAB in *Harold* found that Harold's 1971 injury and 1973 injury became permanent and stationary at the same time *the WCAB was still properly exercising its continuing jurisdiction over the 1971 injury.* Here, [Volomino's] 1963 injury award became final in 1969, and has never been reopened. Thus, at the time of the filing of the claims for the 1975 specific injury and the cumulative trauma injury, the award for the 1963 injury had long since become final. It was improper for the WCAB to alter the permanent and stationary date for the 1963 injury to bring it up to when the current injuries became permanent and stationary so as to apply the doctrine in *Wilkinson.* Nothing in *Harold* permits the modification of the permanent and stationary date after the WCAB has lost jurisdiction; to the contrary *Harold* demonstrates that the WCAB has exceeded its jurisdiction and failed to give res judicata effect to the now final 1963 injury award." (*Volomino, supra,* 118 Cal.App.3d at pp. 274-275, italics added; accord, *Stoiber, supra,* 5 Cal.App.4th at p. 1410.[10])

Reviewing the instant record, we find the same pivotal fact which required *Volomino* to distinguish *Harold.* Applicant did not file, within five years of

---

[10]In *Stoiber, supra,* the employee sustained, as pertinent, two successive industrial back and psyche injuries on September 13, 1979, and November 8, 1983. (5 Cal.App.4th at p. 1405; all citations in this footnote are to *Stoiber.*) On February 13, 1987, *when the Board had proper jurisdiction over both injuries, the WCJ determined that the injuries became permanent and stationary at the same time.* (*Ibid.*) *Wilkinson* was applied, and Stoiber was awarded a PD of 97¼ percent, payable for 599¼ weeks at $130 per week, the rate in effect at the time of the latter 1983 injury. Liability was divided equally between the two injuries. A life pension also was awarded to commence after payment of the PD. (*Ibid.*) On October 25, 1988, Stoiber filed a petition to reopen for new and further PD. (*Id.* at p. 1406.) The WCJ determined that the 1979 injury could not be reopened because it was barred by the jurisdictional time limitations in sections 5410 and 5804. Regarding the 1983 injury, the WCJ granted the petition. Although finding Stoiber 100 percent disabled, the WCJ did not award a PD of 100 percent payable at the higher rate of $196 per week for life because of the jurisdictional bar. (5 Cal.App.4th at p. 1406.) Accordingly,

the date of injury, a petition to reopen the 7½ percent PD and the 20 percent supplemental PD previously awarded for the October 1970 injury. The Board did not have continuing jurisdiction over the October 1970 injury on September 26, 1991, when the WCJ altered the permanent and stationary date for the 1970 injury, determining that the three successive industrial injuries became permanent and stationary at the same time. This action clearly exceeds the Board's continuing jurisdictional powers. (*Volomino, supra,* 118 Cal.App.3d at pp. 274-275; *Harold, supra,* 100 Cal.App.3d at p. 786; *Stoiber, supra,* 5 Cal.App.4th at p. 1410.) To then award applicant a combined 100 percent PD for all three injuries based upon the rates in effect at the time of the last injury in 1988 disregards the finality of the 1970 injury case. (*Volomino, supra,* at p. 275; *Harold, supra,* at p. 787; *Stoiber, supra,* at p. 1410.) Nothing in *Harold* permits the Board to exceed statutorily mandated jurisdictional time limitations so that *Wilkinson* may be applied whenever updated medical evidence credibly indicates that successive industrial injuries become permanent and stationary at the same time.

Hence, we hold that the Board did not have jurisdiction to alter the permanent and stationary date for the 1970 injury. (§§ 5410, 5804; *Volomino, supra,* 118 Cal.App.3d at pp. 273-275; *Harold, supra,* 100 Cal.App.3d at pp. 786-787; *Stoiber, supra,* 5 Cal.App.4th at p. 1410.) On the five-year anniversary date of the 1970 injury—October 9, 1975—the Board's awards therein were final and, as such, must be given res judicata effect. (*Harold, supra,* 100 Cal.App.3d at pp. 786-787, citing *Dow Chemical Co.* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 483, 491 [62 Cal.Rptr. 757, 432 P.2d 365].)

III. CONCLUSION

Applicant is not entitled to one consolidated PD award of 100 percent for all three injuries payable at $224 per week for life. Because the prior awards for the 1970 injury are final and the Board is without jurisdiction to alter

---

after apportionment of the PD for the 1979 injury, 51¼ percent PD at the weekly rate of $130 was awarded for the 1983 injury with monetary credit for prior payments. (*Ibid.*) The Board granted reconsideration and rescinded the WCJ's decision. In view of the prior award for a combined PD under *Wilkinson,* the Board held that Stoiber was entitled to one-half the monetary value of $196 for a permanent, total disability in the amount of $98 per week for life for the 1983 injury. (*Ibid.*) On review, the court annulled the Board decision, relying on *Harold.* Like *Harold,* stated the court, the Board had jurisdiction over both injuries when it found that they were permanent and stationary at the same time. (*Id.* at p. 1410.) Therefore, held the court, *Wilkinson* was to be applied to the extent possible. (*Id.* at pp. 1409-1410.) Accordingly, Stoiber received a 100 percent PD award payable at $196 per week for life once 299.63 weeks of PD indemnity at $130 per week, previously paid for the 1979 injury, accrued. (*Id.* at p. 1410.)

them in any way, the PD attributable to that injury is preexisting under section 4750. Apportionment of PD, therefore, is appropriate pursuant to *Fuentes.*

Accordingly, the Board order denying reconsideration dated December 16, 1991, is annulled, and the cause remanded for further proceedings consistent with the views expressed herein.

King, J., and Haning, J., concurred.