[Civ. No. 42917. First Dist., Div. Four. July 23, 1979.]

MARVIN TAYLOR, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
MISSION INSURANCE COMPANY, Respondents.

**COUNSEL**

David M. Taylor for Petitioner.

Charles L. Swezey, Philip M. Miyamoto, Thomas J. McBirnie, Gene Lam, Hoge, Fenton, Jones & Appel, Dana Chaney and Raymond W. Haworth for Respondents.

Alfred Lombardo as Amicus Curiae.

**OPINION**

**RATTIGAN, J.**—Marvin Taylor (hereinafter applicant) applied to respondent Workers' Compensation Appeals Board (the Board) for industrial benefits due him by reason of three separate back injuries he had sustained in the course of his employment. In proceedings to be described, the Board effectively determined that he had incurred a combined 69 percent permanent disability from all three injuries, did not apportion it among them, but made separate awards which reflected a three-way apportionment of the permanent disability *indemnity* payable to applicant. We granted his petition for review of the opinions, orders, and decisions which produced these results.

The record is unusually complicated because it documents three separate worker's compensation proceedings, reports medical and procedural sequences over a period of almost six years, and involves a progression of arcane arithmetical calculations which are riddled with errors. We have nevertheless been required to analyze its details in order to perfect our understanding of the matters under review. It supports the following chronological recitals:

At all pertinent times, applicant worked for a single employer as a tractor driver. He first injured his back while working on January 31,

1972. He experienced back pain for which he consulted Dr. Banks, a chiropractor. Dr. Banks found no disability and prescribed chiropractic treatment. Applicant returned to work four weeks after the injury. He remained on the job for the next 18 months, during which he experienced back pain and was treated by Dr. Banks from time to time.

Applicant again injured his back while working on July 11, 1973, and visited Dr. Banks with complaints of back pain. Dr. Banks administered another chiropractic treatment which produced no improvement. Applicant then consulted his family physician, who hospitalized him. He was not again treated or seen by Dr. Banks. He was eventually referred to Dr. Foster, a neurosurgeon. Dr. Foster concluded that he had a herniated lumbar disc, recommended surgery, and performed it in August of 1973.

Applicant's back pain subsided after the surgery, and he returned to work in early 1974. He again experienced back pain later that year, and stopped working in November. Dr. Foster continued to treat him during and after this period. He was unable to return to work because of continued pain.

Applicant filed three separate applications for benefits with the Board on January 8, 1975. The proceedings which followed were 75 SAL 6258, relative to the specific back injury of January 31, 1972; 75 SAL 6259, relative to the specific back injury of July 11, 1973; and 75 SAL 6256, in which he alleged and sought benefits for a cumulative back injury incurred from January 31, 1972, to November 23, 1974.

Respondent Mission Insurance Company, the workers' compensation insurance carrier for the one employer involved, appeared in the three proceedings. After a consolidated hearing before a Board referee in May 1975, the proceedings were eventually submitted on applicant's testimony at the hearing; deposition testimony given by Dr. Foster on June 10, 1975, and a series of past and current reports by him; a report by Dr. Banks dated February 4, 1972; and a current report by Dr. Spaulding, an orthopedist who had examined applicant for the insurance carrier.

In December 1975, the referee filed a consolidated opinion covering all three proceedings and a separate award in each. He found that applicant had incurred the three separate injuries claimed and that his condition was "not yet permanent and stationary." He awarded applicant tempo-

rary disability indemnity in each proceeding and ordered its continued payment, "indefinitely," in 75 SAL 6256.[1]

The three proceedings were again heard together, before the same referee, in 1976. They were submitted on the medical reports and testimony received in 1975; further testimony by applicant and Dr. Foster and current reports from the latter; testimony and reports from two more physicians who had examined applicant in 1976; and excerpts from Dr. Banks' records compiled while he was treating applicant in 1972 and 1973.

On December 8, 1976, the referee filed another consolidated opinion covering all three proceedings and a second award (Supplemental Findings and Award) in each. He stated in the opinion his determinations that applicant's "condition became permanent and stationary" as of April 16, 1976; that a recommended permanent rating of 69 percent was to be adopted; that 50 percent of the 69 percent permanent disability was "due to" the specific injury of January 31, 1972; and that applicant's "remaining disability" was "equally attributable to the specific injury of July 11, 1973 and the cumulative injury of January 31, 1972 through November 23, 1974."

In the award consequently made in 75 SAL 6258, the referee found that "after apportionment" the specific injury of January 31, 1972, had "caused permanent disability of 34½%" (50 percent of the full 69 percent rated in the opinion) and awarded applicant "138 weeks of disability payments at the rate of $52.50 per week in the total sum of $7,245.00." In the awards made in 75 SAL 6259 and 6256, the referee found that "after apportionment" each of the two later injuries had "caused permanent disability of 17¼%" (25 percent of the full 69 percent) and awarded applicant "59.25 weeks at the rate of $70.00 per week in the total sum of $4,077.50" for each injury.[2]

---

[1]Respondent insurance carrier petitioned the Board for reconsideration of the three 1975 awards. The Board denied its petition in March 1976, and the carrier did not seek review in this court. It was thus finally adjudicated that applicant had sustained the three separate injuries in fact and that his condition had not become "permanent and stationary" as of December 1975.

[2]Our description of these two awards quotes only the one made in 75 SAL 6259, from which the other one deviated because of arithmetical errors. The referee obviously intended the two awards to be identical in the terms quoted here, and (as will appear) the Board effectively equalized them when it recalculated them later. For both reasons, we treat them as having been identical when the referee made them.

The referee thus apportioned applicant's 69 percent *permanent disability* among the three injuries on a 50 percent-25 percent-25 percent basis and made awards for three separate permanent disabilities found as a result of the apportionment. He also applied lower rates of indemnity in the award for the specific injury of January 31, 1972, and higher rates in the awards for the two later injuries, because of a chronology of changes in the pertinent statutory schedules.[3] The result of his combined formulation was to make a full 50 percent of applicant's overall permanent disability compensable at the lower rates. Applicant challenged this result by filing a petition for reconsideration addressed to all three awards.

In a "Joint Report" on the petition, filed with the Board in December 1976, the referee reviewed his 50 percent-25 percent-25 percent apportionment among the three injuries and cited the evidentiary sources on which he had based it. He also explained the problem caused by the statutory rate changes which had taken effect April 1, 1972. (See fn. 3, *ante.*) The Board granted reconsideration and deferred action in the three proceedings pending the Supreme Court's decision which materialized in May 1977, as *Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491 [138 Cal.Rptr. 696, 564 P.2d 848].

In October 1977, the Board filed a consolidated opinion covering all three proceedings ("Opinion On Decision After Reconsideration") and a "Decision After Reconsideration" in each. The Board stated in the opinion that *Wilkinson* was "controlling" because "the fact that . . .

---

[3]We here enter the labyrinthine scheduling provisions of the Labor Code, to which statutory references are made except where otherwise indicated. At any pertinent time, applicant was entitled to receive weekly payments of permanent disability indemnity (1) in the maximum amount per week permitted by section 4453 and (2) for the number of weeks scheduled in related sections. In 75 SAL 6258, he was awarded the maximum amount of $52.50 per week for 138 weeks pursuant to sections 4453, 4658, and 4659 as they read for a 34½ percent permanent disability when he sustained the specific injury of January 31, 1972. (See former § 4453 as last amended by Stats. 1969, First Ex. Sess. 1968, ch. 4, § 4, pp. 31-32; former §§ 4658 and 4659 as last amended by Stats. 1959, ch. 1189, §§ 13-14, p. 3280.) The pertinent figures were increased in a 1971 enactment which affected all three sections and became operative April 1, 1972. (Stats. 1971, ch. 1750, § 1, pp. 3774-3775; §§ 5-5.7, pp. 3776-3777; § 11, p. 3779.) The new rates were employed in the awards made in 75 SAL 6259 and 6256, in each of which applicant was awarded the maximum amount of $70 per week for 59.25 weeks pursuant to section 4453, subdivision (a), and section 4658, subdivision (a), as they read for a 17¼ percent permanent disability after April 1, 1972. (See Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) §§ 14.11, 14.21.) The referee thus applied the pre-April 1, 1972, rates to the disability he had apportioned to the specific injury of January 31, 1972, and the post-April-1, 1972, rates to each of the disabilities he had apportioned to the other two injuries, on the theory that each award was to be calculated with the rates in effect when the respective injury was incurred.

applicant was injured at the same part of the body while employed by the same employer is not controverted." The Board also sustained the referee's 50 percent-25 percent-25 percent apportionment on the strength of the evidentiary sources he had cited for it in his "Joint Report,"[4] but recalculated its consequences. The language showing the recalculation was riddled with typographical errors which utterly confused the three proceedings to which it was addressed. With appropriate corrections, it read as follows:

"The determination of the amount of the award should be based upon apportionment of the dollar value of applicant's permanent disability rather than a percentage of permanent disability caused by the respective injuries. Therefore, . . . applicant's award should be based upon a combined permanent disability of 69%, of which 50% of the indemnity is attributable to the injury in Case No. 75 SAL 6258 and of which 25% of the indemnity is attributable to each injury in Case Nos. 6259 and 6256 respectively. However, since these cases involve two different compensation rates, the compensation rate schedule . . . in force at the time of the injury should be used in apportioning the dollar value of applicant's permanent disability. Thus, the dollar value of the 69% permanent disability in Case No. 75 SAL 6258 is $14,490.00 of which 50% is attributable to said case. Thus, the sum of $7,245.00 is attributable to said injury. For Case No. 75 SAL 6259 and 6256, the dollar value of 69% [permanent] disability is $26,180.00 of which 25% is attributable to each injury in said cases respectively. Thus, the sum of $6,545.00 is attributable to each injury . . . ."

In each of two identical decisions consequently filed in 75 SAL 6259 and 75 SAL 6256, the Board "rescinded" the referee's 1976 award for each of the post-1972 injuries; found that "[t]he injury herein together with the injury in . . . [each of the other two proceedings] . . . caused a *combined permanent disability* of 69%, 25% *of the indemnity* for which is attributable to the injury herein" (italics added); and awarded applicant

---

[4]The Board relied on language it quoted from the "Joint Report" which read in pertinent part as follows: "The deposition of Dr. Foster of June 10, 1975 . . . , which reads: 'A. It was our opinion that the patient [applicant] had sustained a lumbar disc herniation . . . as a consequence of . . . the injury of January 31, 1972 . . . ,' together with applicant's testimony . . . [at the 1975 hearing] . . . of development of radiation in . . . both legs, prior to the July 11, 1973 injury, led . . . to the conclusion that there had been significant compromise of the disc prior to the second injury and, accordingly, 50 percent of the permanent disability was attributed to that first injury." The Board also relied on passages it quoted from a 1975 report in which Dr. Spaulding had stated that on January 31, 1972, applicant had sustained "an original injury to his low back . . . from which he never completely recovered" and that "an apparent frank [sic] disc herniation occurred" when he was injured again on July 11, 1973.

permanent disability indemnity for each injury "at the rate of $17.50 per week beginning April 20, 1976 and continuing for 374 weeks. . . ." In the decision filed in 75 SAL 6258, the Board "affirmed and adopted" the referee's 1976 award for the specific injury of January 31, 1972.[5]

Applicant filed another petition for reconsideration addressed to all three decisions. The Board denied it in an "Opinion And Order Denying Reconsideration," whereupon he petitioned this court for review. Having granted his petition, we necessarily review all opinions, orders, and decisions filed by the Board in and after October 1977. We refer to them collectively as "the award," which we annul for the reasons next stated.

### The Evidence Will Not Support
### an Apportionment Among the
### Three Injuries on Medical Grounds

It is undisputed that applicant's condition resulting from all three injuries became permanent and stationary at the same time: i.e., on April

[5]The Board's 50 percent-25 percent-25 percent apportionment having emerged in final dollar terms at this point, we retrace its arithmetical calculations (and more errors in them). The two different compensation rates it applied are described in footnote 3, *ante,* to which we refer in citing their statutory origins.

The "dollar value" of $6,545 the Board found "attributable" to each of the two injuries incurred after April 1, 1972, was calculated on the basis of the statutory schedules as they applied to a 69 percent permanent disability after that date, thus: $70 per week (the maximum weekly permanent disability indemnity permitted by § 4453, subd. (a), as amended) × 374 weeks (§ 4658, subd. (a), as amended) = $26,180, of which the 25 percent attributed to each of these injuries was $6,545. In the new award made for each in 75 SAL 6259 and 75 SAL 6256, the Board ordered disbursement of the $6,545 by (1) providing that indemnity was to be paid for the full 374 weeks scheduled for a 69 percent permanent disability after April 1, 1972, but (2) limiting the weekly payments to $17.50, which is 25 percent of the $70 weekly maximum schedule for that disability after the same date.

The "dollar value" of $7,245 the Board found "attributable" to the specific injury of January 31, 1972, was calculated on the basis of the statutory schedules as they applied to a 69 percent permanent disability before April 1, 1972, thus: $52.50 per week (the maximum weekly payment permitted by former § 4453) × 276 weeks (former §§ 4658 and 4659 = $14,490, of which the 50 percent attributed to this injury was $7,245. If the Board had ordered disbursement of the $7, 245 for the full 276 weeks scheduled for a 69 percent permanent disability in former sections 4658 and 4659 (following the pattern it applied in the other awards described above), it would have limited the weekly payments to $26.25. It instead affirmed the referee's 1976 award in 75 SAL 6258, which ordered the same "dollar value" ($7,245) but made it payable at the rates he had applied for the 34½ percent permanent disability he had apportioned to the injury ($52.50 for 138 weeks). The Board confesses a further error in this regard, but states that it "will not affect the outcome" because the affirmed award will produce payment of the same "dollar value" of $7,245 to applicant. The statement is true in terms of the aggregate result reached, but it ignores applicant's obvious interest in how much he will be paid per week and for how long.

16, 1976, as the referee found in December of that year. This means that no permanent disability caused by any of them is "previous" or "prior" to another within the meaning of section 4750,[6] that an apportionment among them is accordingly not required by that section, and that none can be made unless there is "substantial evidence" that the "normal progression" of the first injury would have caused permanent disability. (*Wilkinson* v. *Workers' Comp. Appeals Bd., supra,* 19 Cal.3d 491 at pp. 497-498.)

In its opinion and order denying reconsideration, the Board stated its "opinion that the 1972 injury would have and did progress independent of the other injuries to cause a permanent disability." This recital effectively paraphrased the *Wilkinson* language requiring "substantial evidence" relative to the "normal progression" of an earlier injury before there can be an apportionment to it, but the Board based its "opinion" on the evidentiary sources previously cited and quoted: an extract from the deposition testimony of Dr. Foster, passages from Dr. Spaulding's 1975 report, and applicant's testimony concerning the "radiation" symptoms he had experienced after he was injured on January 31, 1972, and "prior to the July 11, 1973 injury." (See fn. 4, *ante.*) Neither of the quoted medical sources provides any opinion which even suggests that the "normal progression" of the first injury would have caused permanent disability by itself. (See *ibid.*) Applicant's testimony obviously does not supply an expert opinion to that effect. We find no such opinion anywhere in the voluminous testimony or in the several medical reports. Lacking it, this record shows no "substantial evidence" supporting an apportionment among the three injuries on medical grounds. (*Wilkinson* v. *Workers' Comp. Appeals Bd., supra,* 19 Cal.3d 491 at p. 498.)

The only practitioner who saw applicant before the second injury was Dr. Banks, who treated him in 1972 and 1973. Dr. Banks' report dated February 4, 1972, and his 1972-1973 records, show that he considered applicant "able to work" at all times while under treatment and that he (Dr. Banks) "anticipated" that the first injury would cause no permanent disability at all. The latter prognosis eliminates Dr. Banks as a source of

[6]Section 4750 provides: "An employee who is suffering from a *previous* permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the *previous* disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no *prior* disability or impairment had existed." (Italics added.)

any current opinion concerning the "normal progression" of that injury to a result he failed to anticipate.

Because none of the other practitioners saw applicant "until after the second injury, any attempt on their part to allocate the combined disability . . . is likely to be no more than speculation and guesswork." (*Wilkinson* v. *Workers' Comp. Appeals Bd., supra,* 19 Cal.3d 491 at p. 499.) We would therefore serve no useful purpose by ordering pursuit of the elusive element of "normal progression" as to applicant's first injury. He is entitled to indemnity for his combined permanent disability of 69 percent at this time, without apportionment among his three injuries on medical grounds and without further examination of that prospect on remand. (See *id.,* at p. 502.)

■ *The Law Neither Requires Nor Permits an Apportionment Among the Three Injuries by Their "Dollar Values"*

We here meet the Board's position that an apportionment among the injuries by their "dollar values" is required by the fact—not presented in *Wilkinson*—that the effective dates of the injuries "straddle" the April 1, 1972, breakpoint at which the statutory rates of permanent disability indemnity were increased. (See fn. 3, *ante.*) The Board contends that this result is mandated by section 4453.5, which operates to freeze the "[b]enefits payable on account of an injury" to the rates in effect at the "time" it occurred and without regard to any "subsequent statutory change" in them.[7]

A similar contention was rejected in a recent decision by Division Two of this court. (*Nuelle* v. *Workers' Comp. Appeals Bd.* (1979) 92 Cal.App.3d 239 [154 Cal.Rptr. 707] [hg. den. July 12, 1979].) The applicant there had incurred a combined total (100 percent) permanent disability as the result of two specific injuries she had incurred before the breakpoint of April 1, 1972, and one cumulative injury afterward, all of which were in the same part of her body and became "permanent [and stationary] at the same time." (*Id.,* at pp. 242-243, 246, 249.) The Board similarly—and indistinguishably—apportioned the consequent "indemnity," as opposed to the "permanent disability itself," on the theory that this was required by

---

[7]Section 4453.5 provides in pertinent part: "Benefits payable on account of an injury shall not be affected by a subsequent statutory change in amounts of indemnity payable . . . , and shall be continued as authorized, and in the amounts provided for, by the law in effect *at the time* the injury giving rise to the right to such benefits occurred." (Italics added.)

section 4453.5. (See pp. 242-246.) The arithmetical result markedly—and also indistinguishably—reduced the total indemnity to which the applicant was otherwise entitled for the combined disability. (P. 245.)

Rejecting both the theory and the result, the *Nuelle* court (1) cited *Van Voorhis* v. *Workmen's Comp. Appeals Bd.* (1974) 37 Cal.App.3d 81, 87-88 [112 Cal.Rptr. 208], for the proposition that the "date" of a compensable injury, as fixed for purposes of the statute of limitations (§§ 5411-5412) is not necessarily the "time" of its occurrence within the meaning of section 4453.5 (92 Cal.App.3d at pp. 247-248); (2) identified the "time" at which the applicant's "compensable disability" had developed as shown on the record under review (p. 248); (3) pointed out that her situation presented "a case where the interaction between the injuries would make apportionment *of disability* impossible or inequitable" (italics added) and that the complications attending an apportionment of *indemnity* in that situation were such that section 3202 commanded a liberal construction of the "relevant statutes" in the interests of the affected worker (pp. 248-249); and (4) reached the bottom-line holding that the applicant was "entitled to benefits at the rate applicable at the time the last injury giving rise to such benefits occurred." (P. 249.)

The *total* (100 percent) combined permanent disability of the worker in *Nuelle* was greater than applicant's combined 69 percent disability, the precise sequence of her injuries was somewhat different from the one he experienced, and the *Nuelle* court ostensibly qualified its bottom-line holding by isolating it to "the particular circumstances shown to exist" in that case. (*Nuelle* v. *Workers' Comp. Appeals Bd., supra,* 92 Cal.App.3d 239 at p. 249.) None of these factors warrants any deviation from that holding in the otherwise indistinguishable situation shown here, and we deem it controlling. Applicant is accordingly entitled to receive "benefits at the rate applicable at the time the last injury giving rise to such benefits occurred." (*Ibid.*) This translates to $26,180 in permanent disability indemnity payable at the rate of $70 per week for 374 weeks pursuant to the statutory schedules as they read after April 1, 1972. (See fns. 3 and 5, *ante.*)

We reach the same result for reasons of statutory interpretation which support *Nuelle* but do not appear in it, and which we cite as alternative grounds of decision. We have seen that the Board proposed to effectuate its 50 percent-25 percent-25 percent apportionment in "dollar values" by reducing the amounts of the weekly payments it was required to order pursuant to section 4453 as that statute read before the breakpoint date of

April 1, 1972, and pursuant to its subdivision (a) as it read thereafter. (See fn. 5, *ante.*) Neither version of the statute permitted such reduction in terms of money. The Board could have effectuated the apportionment in the same "dollar values" by ordering weekly payments in the amounts scheduled in section 4453 but conversely reducing the number of weeks scheduled in sections 4658 and 4659 as they read before the breakpoint date and in section 4658, subdivision (a), as it read afterward. No pertinent version of either statute permitted such reduction in point of time.

Section 4453.5 offers no indication that the Legislature intended its language to authorize either such departure from the scheduling statutes where a "combined permanent disability" results from multiple industrial injuries which have become permanent and stationary at the same time. It is also unlikely that the Legislature intended to compel the excursions in mind-numbing arithmetic, and the exposure to errors in it, which either departure involves as shown by this record. (See fn. 5, *ante.*) In sum, section 4453.5 does not affect the indemnity scheduled for applicant's 69 percent permanent disability because it is not to be construed as compelling a procedure the scheduling statutes do not permit. ■ A contrary interpretation is precluded by the interpretive canon that " 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *Eckl* v. *Davis* (1975) 51 Cal.App.3d 831, 848-849 [124 Cal.Rptr. 685].)

■ Any application of section 4453.5 to the present situation may also be ruled out by a liberal interpretation of its language which limits the calculation of "[b]enefits payable on account of *an* injury" to the compensation rates in effect when "*the* injury . . . occurred." (See the full text quoted in fn. 7, *ante* [italics added here].) Applicant has a single combined permanent disability caused by three injuries which became permanent and stationary at the same time. The indemnity payments due him may accordingly be deemed "benefits payable on account of *a disability* caused by *injuries,*" which means that they are not "[b]enefits payable on account of *an* injury" within the meaning of section 4453.5. The latter interpretation of the section's meaning is strict in the sense that it is literal, but it is more liberal than the Board's construction because it operates in favor of applicant by eliminating the section and its rate-freezing effect from consideration. It is to be applied for that reason alone. (§ 3202; *Nuelle* v. *Workers' Comp. Appeals Bd., supra,* 92

Cal.App.3d 239 at p. 249.) For all the reasons cited, section 4453.5 neither commands nor permits an apportionment of the indemnity to which applicant is entitled.

The award is annulled. The case is remanded to the Workers' Compensation Appeals Board with directions to grant applicant permanent disability benefits based upon a combined permanent disability of 69 percent and otherwise consistent with the views expressed in this opinion.

Caldecott, P. J., and Poché, J., concurred.

On August 16, 1979, the opinion was modified to read as printed above.