[Civ. No. 55056. Second Dist., Div. One. Jan. 8, 1980.]

THERESA HAROLD, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
BOARD OF EDUCATION OF THE CITY OF
LOS ANGELES et al., Respondents.

COUNSEL

Geffner & Satzman and Robert Goldstein for Petitioner.

James J. Vonk, Robert M. Jakob, Arthur Hershenson, Frank Evans, Robert La Porta and Richard A. Krimen for Respondents.

OPINION

KAUFMANN, J.*—Petitioner Theresa Harold contends that respondent Workers' Compensation Appeals Board (Board) erred in refusing to reopen her case and in the manner in which it computed the dollar amount of her permanent disability award. While we do not entirely agree with Harold's suggested computations of her permanent disability award, we conclude the Board did err in its computations.

---

*Assigned by the Chairperson of the Judicial Council.

I

Harold has sustained two industrial injuries while employed by respondent Board of Education of the City of Los Angeles (Board of Education). At the time of both injuries Board of Education was insured for workers' compensation liability by respondent State Compensation Insurance Fund (State Fund.).

The first industrial accident occurred on January 26, 1971, (hereinafter 1971 injury) and involved injury to Harold's right major upper extremity and right lower extremity. The second industrial accident occurred on August 28, 1973, (hereinafter 1973 injury) and involved injury only to her right lower extremity. At present Harold is awarded 32½ percent permanent disability for the 1971 injury and 33 percent permanent disability for the 1973 injury.

In the proceedings directly under review herein, Harold seeks to reopen the award for the 1973 injury based upon a "change of law." (Lab. Code, §§ 5803-5805.) Harold's legal basis for reopening the 1973 injury award is that Labor Code section 5803 permits reopening of a case for "good cause" upon filing of a petition within five years of the date of injury; a subsequent judicial interpretation of compensation statutes contrary to a prior administrative interpretation being "good cause" to reopen within the meaning of Labor Code section 5803. (*Knowles* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 1027, 1030 [89 Cal.Rptr. 356].)

Harold has not sought to reopen the award for the 1971 injury as at the time she sought reopening of the 1973 injury award five years had already elapsed from the 1971 injury; thus, the Board no longer had continuing jurisdiction to reopen the 1971 injury award. (1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1979) § 9.02.) As to the 1973 injury the Board could act on the petition to reopen after the five-year period from the injury as Harold had filed the petition to reopen *within* the five-year period. (1 Hanna, *op. cit. supra,* § 9.02[3].)

The dates of the two injuries are important in two distinct respects. First, as obvious from the above, only the 1973 injury award is before the court in the present proceedings. Secondly, in 1972 legislative changes were made in the Labor Code which effected the computation of permanent disability benefits. The argument Harold makes regarding

the computation of her permanent disability award cannot be understood unless these statutory changes are examined and their subsequent application by appellate opinion are reviewed.

*Statutory Provisions for Computation of Permanent Disability Benefits*

"Prior to April 1, 1972, [Labor Code] section 4658 provided that an injured employee was entitled to four weeks of compensation for each percentage point of permanent disability which was of industrial origin. (Stats. 1949, ch. 1583, § 1, p. 2833.)" (*Rumbaugh* v. *Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 907, 912, fn. 8 [151 Cal.Rptr. 563].)[1] "Since April 1, 1972, section 4658[2] has provided a graduated scale whereunder the number of weekly benefits increases in proportion to the percentage of the permanent disability. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 4 [128 Cal.Rptr. 673, 547 P.2d 449]; *Aten* v. *Workers' Comp. Appeals Bd.* (1977) 75 Cal.App.3d 113, 117 [142 Cal.Rptr. 42].)" (*Rumbaugh, supra,* 87 Cal.App.3d at p. 910; fns. omitted.)

---

[1]Prior to April 1, 1972, and as applicable to the 1971 injury, Labor Code section 4658 provided: "If the injury causes permanent disability, the percentage of disability to total disability shall be determined and the disability payment computed and allowed according to the following schedule:

| Percentage of permanent disability incurred | Number of weeks for which 65 percent of average weekly earnings allowed | Percentage of average weekly earnings allowed for remainder of life after period for which 65 percent of average weekly earnings allowed |
|---|---|---|
| 1 | 4 | 0 |
| 10 | 40 | 0 |
| 20 | 80 | 0 |
| 30 | 120 | 0 |
| 40 | 160 | 0 |
| 50 | 200 | 0 |
| 60 | 240 | 0 |
| 70 | 280 | 15 |
| 80 | 320 | 30 |
| 90 | 360 | 45 |
| 100 | 400 | 60" |

(Stats. 1937, ch. 90, § 4658, p. 283. Amended by Stats. 1949, ch. 1583, p. 2883; Stats. 1959, ch. 1189, § 13, p. 3280.)

[2]Labor Code section 4658 presently provides in pertinent part: "If the injury causes permanent disability, the percentage of disability to total disability shall be determined,

The second major change in permanent disability effective April 1, 1972, pertains to earnings; the rate of the weekly permanent disability payments are based upon the injured employee's "average weekly earnings."

and the disability payment computed and allowed, according to subdivision (a). However, in no event shall the disability payment allowed be less than the disability payment computed according to subdivision (b).

"(a)

Column 1—Range of percentage of permanent disability incurred:

Column 2—Number of weeks for which two-thirds of average weekly earnings allowed for each 1 percent of permanent disability within percentage range:

| Column 1—Range of percentage of permanent disability incurred: | Column 2 |
|---|---|
| Under 10 | 3 |
| 10–19.75 | 4 |
| 20–29.75 | 5 |
| 30–49.75 | 6 |
| 50–69.75 | 7 |
| 70–99.75 | 8 |

"The number of weeks for which payments shall be allowed set forth in column 2 above based upon the percentage of permanent disability set forth in column 1 above shall be cumulative, and the number of benefit weeks shall increase with the severity of the disability. The following schedule is illustrative of the computation of the number of benefit weeks:

| "Column 1—Percentage of permanent disability incurred: | Column 2—Cumulative number of benefit weeks: |
|---|---|
| 5 | 15.00 |
| 10 | 30.25 |
| 15 | 50.25 |
| 20 | 70.50 |
| 25 | 95.50 |
| 30 | 120.75 |
| 35 | 150.75 |
| 40 | 180.75 |
| 45 | 210.75 |
| 50 | 241.00 |
| 55 | 276.00 |
| 60 | 311.00 |
| 65 | 346.00 |
| 70 | 381.25 |
| 75 | 421.25 |
| 80 | 461.25 |
| 85 | 501.25 |
| 90 | 541.25 |
| 95 | 581.25 |
| 100 | for life |

". . . . . . . . . . . . . . . ."

Prior to April 1, 1972, and at the time of the 1971 injury, Labor Code section 4658 established the permanent disability rate as 65 percent of "average weekly earnings." (1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 5.1.) "Average weekly earnings" were set by Labor Code section 4453 as 95 percent of an injured employee's actual weekly wages. Section 4453 also set average weekly earnings as not less than $30.77 per week nor more than $80.77 per week. Accordingly, the highest permanent disability rate at the time of the 1971 injury was $52.50 per week. (1 Herlick, *supra,* § 5.1, 7.51.)

Effective April 1, 1972, section 4453 was amended to increase the minimum and maximum level of average weekly earnings. Under the amendments, for purposes of computing the permanent disability weekly rate, the maximum (at least for the 1973 injury) average weekly earnings were set at no more than $107.69 per week. (Stats. 1971, ch. 1330, § 1, p. 2632; Stats. 1971, ch. 1750, § 7, p. 3778.) Accordingly, for the 1973 injury, the maximum permanent disability rate is $70 per week. (1 Herlick, *supra.*)[3]

For each of the two injuries, Harold's earnings establish the maximum weekly permanent disability rate; $52.50 for the 1971 injury and $70 for the 1973 injury.

The first appellate decision which confronted the problem of the new graduated scale effective April 1, 1972, was *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1 [128 Cal.Rptr. 673, 547 P.2d 449]. *Fuentes* dealt with the computation of permanent disability for a post-April 1, 1972, injury where the injured worker also had nonindustrial disability.

In *Fuentes* the injured worker sustained an industrial injury to his lungs *after* April 1, 1972. While his total permanent disability rated at 58 percent permanent disability only 33.75 percent permanent disability was industrially related. The court applied section 4658 by computing the industrial disability at the bottom of the graduated scale. The court

[3]Effective for injuries on or after April 1, 1974, Labor Code sections 4453 and 4658 were again amended. The amendments of section 4453 set average weekly earnings at 100 percent of actual weekly earnings and decreased the maximum average weekly earnings for permanent disability purposes to $105 per week. (Stats. 1973, ch. 1023, § 2, p. 2028.) Also effective for injuries on or after April 1, 1974, section 4658 was amended to set the permanent disability rate as two thirds of average weekly earnings and provide for weekly payments for life in the case of permanent total (100 percent) disability. (Stats. 1973, ch. 1023, § 6, p. 2029.)

held that this method was required by Labor Code section 4750 which states: "An employee who is suffering from a previous permanent disability or [a] physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

The court in *Fuentes* acknowledged that by their application of section 4658 an injured worker who sustained one injury which resulted in 50 percent permanent disability would receive greater benefits than one who sustained two successive injuries each of which causes a permanent disability of 25 percent when considered alone.[4] The court viewed the result as "neither unjust nor unfair" but "[r]ather, it is a consequence of the recent amendments to section 4658 and is consistent with the ...policy [of § 4750] of encouraging employers to hire the disabled." (*Fuentes, supra,* 16 Cal.3d at p. 8.)

*Fuentes,* however, was distinguished by the Supreme Court in its subsequent opinion in *Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491 [138 Cal.Rptr. 696, 564 P.2d 848].

In *Wilkinson* the injured sustained two successive bilateral knee injuries while working for the same employer. Both injuries occurred after April 1, 1972. The two injuries became permanent and stationary[5] at the same time. The Board awarded the injured a 15.25 percent perma-

---

[4]"An award of 50 percent permanent disability at the maximum permanent disability rate (see §§ 4453, 4658) entitles an injured employee to permanent disability payments totalling $16,870 which would be payable at $70 per week for 241 weeks. On the other hand two separate ratings of 25 percent permanent disability, each at the maximum permanent disability rate, would result in two awards each of $6,685 payable at $70 per week for 95.5 weeks. Thus, two separate awards of 25 percent permanent disability each result in an injured receiving a total of $13,370 which is $5,500 less than for a single award of 50 percent permanent disability." (*Rumbaugh, supra,* 87 Cal.App.3d at p. 912, fn. 7.)

[5]"A disability is considered permanent [and stationary] after the employee has reached maximum [medical] improvement, or his condition has been stationary for a reasonable period of time, as may be determined by the Appeals Board or a referee." (WCAB Rules of Prac. & Proc. (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2), § 10900; see also *Bstandig* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 995-996 [137 Cal.Rptr. 713].)

nent disability rating for each injury. The Supreme Court annulled the two separate awards and held that the injured was entitled to a combined permanent disability award of 30.5 percent. The *Wilkinson* court reached that result by following the reasoning of the Board's en banc opinion in *Bauer* v. *County of Los Angeles* (1969) 34 Cal.Comp.Cases 594.

While *Bauer* was decided prior to the adoption of the graduated scale of section 4658, the *Wilkinson* court found it relevant as *Bauer* dealt with the situation where three successive injuries resulted in a combined disability in the life pension range in accord with Labor Code sections 4658 and 4659 (i.e., 70 percent or more permanent disability), while each injury considered alone would not have resulted in a life pension. In *Bauer,* the Board held that the injured was entitled to a life pension.

As summarized by the Supreme Court in *Wilkinson,* the *Bauer* doctrine provides that "whenever a worker, while working for the same employer, sustains successive injuries to the same part of his body and these injuries become permanent at the same time, the worker is entitled to an award based on the combined disability." (*Wilkinson, supra,* 19 Cal.3d at p. 494.)

The *Wilkinson* court found that *Bauer* was not inconsistent with the requirement of Labor Code section 4750 that there be apportionment of successive permanent disabilities. The court reasoned that "[i]f the worker incurs successive injuries which become permanent *at the same time,* neither permanent disability is 'previous' to the other, and section 4750 hence does not require apportionment." (*Wilkinson, supra,* 19 Cal.3d at p. 497; italics in original.)

The *Wilkinson* opinion then goes on to explain that "*Bauer* also serves the practical purpose of avoiding the necessity for apportioning disability in a class of cases in which, because of the nature and timing of the injuries, any apportionment is likely to be unsupported by substantial evidence." (*Id.,* at p. 497; *Aten* v. *Workers' Comp. Appeals Bd.* (1977) 75 Cal.App.3d 113, 118-119 [142 Cal.Rptr. 42].)

In *Wilkinson,* the court was careful to note that it was not overruling *Fuentes,* but rather that it was distinguishing it based upon *Bauer.* (*Wilkinson, supra,* 19 Cal.3d 491, 500-501; *Rumbaugh, supra,* 87 Cal. App.3d at pp. 911-913.)

The problem of applying the provisions of Labor Code section 4658 where pre-April 1, 1972, and post-April 1, 1972, injuries become permanent and stationary at the same time was first faced in *Nuelle v. Workers' Comp. Appeals Bd.* (1979) 92 Cal.App.3d 239 [154 Cal.Rptr. 707].

In *Nuelle* the injured employee sustained three successive injuries to the same part of the body. Two of the injuries occurred prior to April 1, 1972; the third injury occurred after April 1, 1972. All three injuries became permanent and stationary at the same time after April 1, 1972,[6] and rendered her permanently totally disabled. While the first two injuries had originally been rated for permanent disability prior to the occurrence of the third injury, the evidence established that the first two injuries had actually continued to worsen until those first two injuries became permanent and stationary at the same time as the third. (*Nuelle, supra,* 92 Cal.App.3d at p. 246.)

The *Nuelle* court rejected the Board's complicated formula of a permanent disability award which attempted to apply both the pre- and post-April 1, 1972, rate schedules.[7] The court held "that, under the particular circumstances shown to exist in this case, i.e., where *total* permanent disability results from a combination of successive specific and cumulative injuries to the same part of the worker's body while working for the same employer, and the specific injuries, although the subject of prior permanent partial disability ratings, are found not to be permanent and stationary, and where all the injuries became permanent *at the same time,* applicant is entitled to benefits at the rate applicable at the time the last injury giving rise to such benefits occurred." (*Nuelle, supra,* 92 Cal.App.3d at p. 249.)

---

[6]While all three injuries occurred while employed by the same employer, the requirement that the injuries all occur in the employ of the same employer has recently been declared unnecessary to apply the rule of *Wilkinson.* (*Rumbaugh, supra,* 87 Cal. App.3d at pp. 916-917; *Fullmer v. Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 164, 168-170 [157 Cal.Rptr. 735].)

[7]In *Nuelle* the Board's permanent disability award was as follows: "'Applicant is entitled for her two pre-1972 injuries to an award in each case equal to one-third of the indemnity calculated for 100% permanent disability as well as one-third of the life pension. And, for her post 1974 injury, she is entitled to one-third of the life pension awarded in 100% disability cases. A rating of 100% at pre-1972 rates is equal to an indemnity of $21,000.00, payable at the rate of $52.50 per week for 400 weeks, and thereafter a life pension of $48.46 per week. One-third of the indemnity equals $7,000.00, payable at the rate of $17.50 per week for 400 weeks and thereafter a life pension of $16.15 per week. Under the post 1974 law, 100% permanent disability is equal to an award of $119.00 per week for life. One-third of that award equals $39.56 per week for life.'" (*Nuelle, supra,* 92 Cal.App.3d at p. 245.)

The holding in *Nuelle* was followed in *Taylor v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 139 [156 Cal.Rptr. 906] and *Fullmer v. Workers' Comp. Appeals Bd., supra,* 96 Cal.App.3d 164.

In *Taylor* the injured worker sustained three successive industrial back injuries. One occurred in January 1972 and the two others occurred after April 1, 1972. All three injuries became permanent and stationary on April 16, 1976. As a result of the three injuries the worker sustained 69 percent permanent disability. The court observed as the three injuries became permanent and stationary at the same time "that no permanent disability caused by any of them is 'previous' or 'prior' to another within the meaning of section 4750, that an apportionment among them is accordingly not required by that section, and that none can be made unless there is 'substantial evidence' that the 'normal progression' of the first injury would have caused permanent disability." (*Taylor, supra,* 95 Cal.App.3d at pp. 146-147; fn. omitted.) The court found no substantial evidence supporting any apportionment between the three injuries. The court then held the injured was entitled to a 69 percent permanent disability award calculated upon the benefit rate applicable at the time the last injury giving rise to such benefits occurred. (*Taylor, supra,* at p. 149.)

In *Fullmer* the injured worker sustained two industrial injuries to his right knee; one occurred in 1971 and the second in 1973. The two injuries became permanent and stationary at the same time. The two injuries resulted in 28 percent permanent disability. Again, the court followed *Nuelle* and awarded the injured 28 percent disability based upon the schedule in effect at the time of the second injury in 1973.

II

*Proceedings Before the Appeals Board*
*With Respect to Harold's Injuries*

In the 1971 injury Harold injured her right knee and ankle and her right wrist. On September 25, 1972, Harold was awarded 4 percent permanent disability ($840) for right lower extremity disability; no permanent disability was found as to the right upper extremity.

After Harold sustained the 1973 injury which involved her right lower extremity, she timely filed a claim for that injury. Further, in

October 1974, she filed a petition to reopen (Lab. Code, §§ 5410, 5803, 5804) her 1971 injury, claiming "new and further" disability.

On June 19, 1975, the workers' compensation judge awarded Harold 33 percent permanent disability with respect to the 1973 injury, equivalent to $9,712.50, payable at $70 per week. As to the 1971 injury, the judge granted the petition to reopen and awarded 32½ percent permanent disability equivalent to $6,825 payable at $52.50 per week. The judge found that the injuries were equally responsible for the current permanent disability. (The ½ percent difference in the two ratings is caused by an age adjustment. (See Lab. Code, § 4660, subd. (a).)) The judge also found both injuries became permanent and stationary on January 7, 1975.

Harold sought reconsideration by the Board on the computation of the benefits for the 1973 injury; the Board denied reconsideration on September 8, 1975. In denying the petition, the Board noted currently pending appellate litigation over the computation of benefits. Harold did not seek a writ of review at that time.

After the decision in *Wilkinson,* Harold filed a petition to reopen the 1973 injury on October 5, 1977, arguing a change of law, pointing to *Wilkinson.* No petition to reopen was filed with respect to the 1971 injury; as more than five years had elapsed since the injury the Board no longer had jurisdiction to reopen the case. (Lab. Code, §§ 5410, 5803, 5804.)

The judge denied the petition to reopen on the grounds that (1) substantial evidence supported the apportionment between the two injuries unlike as was the case in *Wilkinson,* and (2) as only the 1973 injury was then before the appeals board there were not two injuries to which to apply *Wilkinson.*

The Board initially granted reconsideration to study the issues presented, but then affirmed the judge's decision. The Board refused to apply *Wilkinson* on two grounds. First, the Board felt that the two injuries did not become permanent and stationary at the same time. The Board stated in this regard that there was "no medical evidence in the record to support a finding that [Harold's] 1971 industrial injury was not permanent and stationary as originally determined by the September [25], 1972 Findings and Award." The Board observed Harold did

not receive any temporary disability subsequent to the finding in 1972 of 4 percent permanent disability for the 1971 injury. Secondly, the Board observed that both injuries did not involve the identical parts of the body; the 1971 injury, "as stipulated between the parties, involved both [Harold's] 'right major upper extremity,' and [her] 'right lower extremity,'" while the "industrial injury of 1973 involved only [Harold's] 'right lower extremity.'"

## III

### *Discussion*

The Board's reasoning that *Wilkinson* could not be applied can be summarized as follows: (1) substantial evidence supports the apportionment between the two injuries; (2) the injuries do not involve totally identical parts of the body; (3) the injuries did not become permanent and stationary at the same time; and (4) the 1971 injury could not be reopened.

In *Aten* v. *Workers' Comp. Appeals Bd., supra,* 75 Cal.App.3d 113, the parties stipulated as to the apportionment between the injuries. The *Aten* court applied *Wilkinson* rather than *Fuentes,* stating: "This is not a case in which it is impossible to say what proportion of the total disability is attributable to each of the three injuries, because the parties have stipulated to [the] exact percentages. . . . [¶] The stipulation does not prevent the application of the *Wilkinson* principle in these cases. The elements of the *Bauer* doctrine, as applied in *Wilkinson,* will be present if it should appear that the two injuries became permanent at the same time." (*Aten, supra,* 75 Cal.App.3d at p. 119.) Accordingly, *Wilkinson* can be applied notwithstanding the finding of apportionment between the two injuries if the two became permanent and stationary at the same time.

The Board found that the 1971 injury became permanent and stationary before the 1973 injury. This, of course, is expressly contrary to the judge's finding that both injuries became permanent and stationary January 7, 1975.

In making this finding of the permanent and stationary date the workers' compensation judge relied upon the medical reports of Lewis N. Cozen, M.D., who was treating Harold for the industrial injuries.

The first available report from Dr. Cozen is the report of his examination of Harold on May 29, 1974. At that time Dr. Cozen stated: "The present condition of her right knee is caused 50 percent by the accident of January, 1971 and 50 percent by the accident of August, 1973 in my opinion. Her condition is not stationary."

Thus, Dr. Cozen declares the residuals of *both* knee injuries not to be permanent and stationary. In his final report of January 9, 1975, Dr. Cozen reports that he examined Harold on January 7, 1975, and that her knee condition was permanent and stationary. At no time between his reports of May 29, 1974, and January 9, 1975, did Dr. Cozen declare that one injury became permanent and stationary before the other. The only reasonable inference from Dr. Cozen's reports is that both injuries became permanent and stationary at the same time on January 7, 1975. Accordingly, the judge's finding that both injuries became permanent and stationary on January 7, 1975, is supported by substantial evidence. (*Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]; *Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; *Market Basket* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 137, 144 [149 Cal.Rptr. 872].)

■ Factual findings of the workers' compensation judge, which are supported by "solid, credible evidence" are "to be accorded great weight by the Board and should be rejected only on the basis of contrary evidence of considerable substantiality." (*Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 318-319 [90 Cal.Rptr. 355, 475 P.2d 451].)

The Board's reasoning for disregarding the judge's finding on the permanent and stationary date is that subsequent to the first award in 1972 for the 1971 injury Harold received no temporary disability. ■ The fallacy of such reasoning is that termination of temporary disability does not mean the achievement of permanent and stationary status. Temporary disability concerns the injured's inability to work. (*Huston* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868 [157 Cal.Rptr. 355].) "Permanent and stationary status refers to medical rehabilitation from an injury, not ability to work." (*Ibid.*) Thus, an injured may be fully capable of working full time (and hence not be entitled to temporary disability) and his medical condition not yet permanent and stationary. (*Ibid.*)

The fact that the rating for the 1971 injury was increased in 1975 from 4 percent to 32½ percent demonstrates that the 1971 injury was not really permanent and stationary in 1972 when the 1971 injury was originally rated. Similar to the situation here, in *Nuelle* two of the three injuries had been rated for permanent disability prior to the third injury. The court in *Nuelle* applied *Wilkinson* as the evidence showed the first two injuries actually were getting progressively worse until the time the two became permanent and stationary at the same time as the third injury. (*Nuelle, supra,* 92 Cal.App.3d at p. 246.)

 Thus, as here there exists no evidence of "considerable substantiality" contrary to the judge's finding that both injuries became permanent and stationary at the same time on January 7, 1975, the Board erred in disregarding such finding. Accordingly, for purposes of applying the rule of *Wilkinson,* the two injuries are considered to have become permanent and stationary at the same time.

The Board also argues that *Wilkinson* does not apply as here the two injuries involve not entirely identical body parts, the 1971 injury involved the "right upper extremity" as well as the "right lower extremity," and the 1973 injury involved only the "right lower extremity." It must be pointed out, however, that for the 1971 injury there was no permanent disability associated with the right upper extremity. In *Wilkinson* the first injury involved both knees but the second injury involved both knees and the back; the permanent disability, in both cases, however, related *only* to both knees; no back disability was involved. Thus, what matters is not necessarily what parts of the body were involved in the injuries but rather what parts of the body are causing the permanent disability. Here, only the "right lower extremity" is involved in the permanent disability. *Wilkinson* can therefore be applied.

The final obstacle to applying *Wilkinson* (and its progeny, *Nuelle, Taylor* and *Fullmer*) is that the 1971 injury is here not under review. When in 1977 Harold sought to reopen the 1973 injury award, the Board's continuing jurisdiction under Labor Code sections 5803-5805 to reopen the 1971 injury for "good cause" upon a petition filed within five years of the date of injury had already expired. Thus, the Board's and this court's jurisdiction is limited to the 1973 injury.

As neither the Board nor the court has jurisdiction over the 1971 injury, the award therein is final and must be given res judicata effect.

(*Dow Chemical Co.* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 483, 491 [62 Cal.Rptr. 757, 432 P.2d 365].) To now award Harold 65½ percent permanent disability (the total permanent disability for both injuries) based upon the rates in effect at the time of the 1973 injury would be to ignore the finality of the 1971 injury award (*ibid.*). However, that the 1971 injury award may not now be altered does not prevent the court from applying *Wilkinson, Nuelle, Taylor* and *Fullmer* to the 1973 injury award to the extent possible.[8]

In applying *Wilkinson, Nuelle, Taylor* and *Fullmer* to the 1973 injury award we observe that the courts in the latter three cases have attempted to avoid unduly complicated arithmetic computations. Further, we are also mindful of the liberal construction of the workers' compensation laws mandated by Labor Code section 3202. (*Nuelle, supra,* 92 Cal.App.3d at p. 249; *Rumbaugh, supra,* 87 Cal.App.3d at pp. 916-917.) Another consideration is the concept of weekly payment of permanent disability benefits. (Lab. Code, §§ 4650, 4658.)

As Harold has met all the factual prerequisites for the application of the rule of *Wilkinson* and *Nuelle* she is entitled to 349.5 weekly payments of permanent disability as is provided for a post-April 1, 1972, award of 65½ percent permanent disability. While an award of 32½ percent permanent disability for the 1971 injury is only 130 weeks of payments, the additional 219.5 weekly payments are not for the 1971 injury but for the increased permanent disability as a result of the 1973 injury. Thus, we are not altering the 1971 award in this respect. How-

---

[8]*Dow Chemical Co., supra,* 67 Cal.2d 483, at first review might seem to suggest that affirmance of the Board's decision herein is required. *Dow Chemical Co.,* however, is distinguishable.

In *Dow Chemical Co.* the injured sustained industrial injuries in 1960, 1961, and a cumulative trauma injury from 1946 to August 1960. The three injuries resulted in a total of 75 percent permanent disability. The referee awarded 7½ percent permanent disability for the 1960 injury and the same for the 1961 injury; for the cumulative trauma injury the referee awarded 60 percent. The 1960 and 1961 injuries became final as no party sought reconsideration; the parties did seek reconsideration on the cumulative trauma claim. The Board on reconsideration awarded 75 percent permanent disability for the cumulative trauma injury, concluding that the permanent disability attributed by the referee to the 1960 and 1961 injuries should be included in the cumulative trauma injury as such injuries were merely a part of the cumulative trauma injury. The court annulled the Board's decision on reconsideration as the modification of the awards in the 1960 and 1961 injuries constituted a failure to give res judicata effect to the final awards for those two injuries.

In *Dow Chemical Co.* the Board thus improperly attempted to *rescind* the final awards for the 1960 and 1961 injuries by saying they were incorrect. Here, so long as we do not seek to repudiate the 1971 injury award we do not violate the holding of *Dow Chemical Co.*

ever, as the 1971 injury award may not be modified the amount of the weekly payments thereunder cannot be adjusted. Accordingly, the first 130 weekly payments may only be $52.50 and the balance of the 219.5 weekly payments are to be $70 per week.[9]

## IV

### *Disposition*

The Board's decision is annulled and the matter remanded to the Board for such further proceedings as are required by our opinion herein.

Lillie, Acting P. J., and Hanson, J., concurred.

A petition for a rehearing was denied January 31, 1980, and the petition of respondent State Compensation Insurance Fund for a hearing by the Supreme Court was denied March 6, 1980.

---

[9]Of course, State Fund is entitled to credit for all prior permanent disability payments to Harold for the 1971 and 1973 injuries.